**UNITED STATES of America**

v.

**Melvin P. DAY, Appellant.**

**No. 16227.**

United States Court of Appeals Third Circuit.

Argued May 2, 1967.

Decided Oct. 10, 1967.

Zeno Fritz, Pittsburgh, Pa., for appellant.

Lawrence G. Zurawsky, Asst. U. S. Atty., Pittsburgh, Pa. (Gustave Diamond, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and SEITZ, Circuit Judges.

OPINION OF THE COURT

SEITZ, Circuit Judge.

The defendant-appellant was convicted by a jury under a four count indictment of selling heroin on two occasions in violation of Title 26 U.S.C. §§ 4704(a) and 4705(a).

The principal ground of defendant's appeal is bottomed on the alleged failure of the Government to disclose the identity of an informer. We turn to the Government's evidence on this point.

A federal narcotics agent testified that accompanied by an informer he approach-

ed a group at a street corner in Pittsburgh, Pennsylvania and asked one of the persons standing there if there were any narcotics in the area. Shortly thereafter the defendant came out of a bar and joined the informer and the agent. The agent was introduced to the defendant by the informer who said "This is John, a friend of mine." Immediately after the introduction the defendant asked the agent and the informer if they were looking for narcotics. The agent said they were and the defendant stated that "he only had one bag at this time." He stated that he was looking for his supply man to come. The agent purchased one bag of heroin at this time. Shortly thereafter on the same day he bought a second bag of heroin from the defendant. Another agent observed the scenes which have been described and corroborated the testimony of the purchasing agent to the extent he was physically able to do so.

The agent who purchased the heroin testified on direct examination that the first time he met the defendant was when he was introduced to him by the informer at the time the defendant made the first of the sales for which he was later convicted. This testimony was of course made in open court in the presence of the defendant. It was not until after this point in the trial that the defendant's counsel first asked for an identification of the informer and the Goverment objected. The matter was argued at length and taken under advisement with the trial court stating, inter alia, "Mr. Day [appealing defendant] knows who the informer is. Who are you kidding?"

The existing confusion was compounded by later developments. The Government contends that it thereafter provided defendant's counsel with the identification. Defendant's counsel take issue with this claim. Next the trial court held an in camera session with the informer without notice to the government or the defendant's counsel. The court later refused to order an identification based on a finding that the informer might be the victim of acts of revenge.

Against this strange background, we turn first to the governing language of the United States Supreme Court in the case of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957):

"* * * once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable."

We are satisfied that tested by any appropriate standard of proof the Government, through the agent's testimony, disclosed the identity of the informer to this defendant. Thus, in our view there is no issue here of Government privilege or defendant prejudice. If we are to recognize the realities, it seems clear that the informer would not have been introducing the undercover agent to the defendant unless the defendant knew the informer. Otherwise, we would have the unnatural situation where a stranger to the defendant would be introducing another stranger to him. This would be a particularly remote possibility in view if the illicit purpose behind the introduction.

We therefore believe that the maneuverings in this case concerning the identity of the informer, whatever their purpose, cannot be supported on the basis of any legitimate need for the identification of the informer. We are satisfied that the defendant was made aware of the informer's identity at least by the direct examination of the narcotics agent. Nor can we find any real issue here as to the sufficiency of the identification. Furthermore, as we read defendant's brief, there is no claim that we are dealing with a refusal by the Government to produce, at defendant's request, a potential witness specifically identified by defendant and somehow subject to the Government's control.

We express no opinion as to the propriety of the in camera procedure adopted by the district court here.

Nor do we here find any merit to the defendant's second claim of prejudice

based on the closing statements of the prosecutor to the effect that material aspects of the Government's case remained uncontroverted. Under the existing circumstances, it was not an indirect comment on the appealing defendant's failure to testify. Compare United States v. Giuliano (1967) 383 F.2d 30 (3rd Cir.).

The judgment of the District Court will be affirmed.

McLAUGHLIN, Circuit Judge, (concurrence in result).

Appellant was charged in a four count indictment with selling heroin on two occasions on March 15, 1966 in violation of Title 26 U.S.C., Sections 4704(a) and 4705(a). The case was tried before a jury with Chief Judge Wallace S. Gourley of the United States District Court for the Western District of Pennsylvania presiding. A verdict of guilty was returned on all four counts and a subsequent motion for a new trial was denied by the court. The appeal is from that conviction.

The facts reveal that on March 15, 1966, at about 2:30 P.M., federal narcotics agent, Norton J. Wilder, accompanied by an informer, approached the Rose Bar on the corner of Frankstown Avenue and Collier Street in Pittsburgh, Pennsylvania. There they encountered the defendant Melvin Day, who was introduced to agent Wilder by the informer. Wilder testified that immediately after the introduction Day asked the two men if they were looking for narcotics; that the agent replied in the affirmative. The defendant replied that at the moment he had only one bag, but that he was waiting for a new supply. Wilder told the defendant that he wanted two bags and that he would take one at that time and one later. When Day said that the price of both bags would be $17 the agent handed him $10 and, since neither man had small change, Wilder said defendant could keep the overage as a credit toward the purchase of the second bag. Day then took off the burgundy felt hat he was wearing and removed therefrom one glassine

envelope which he handed to Wilder. After taking the bag agent Wilder then proceeded to the corner of Frankstown and Lang Street, where twenty minutes later he was joined by the defendant who asked the agent if he still wanted the second bag. When Wilder replied, "Yes, I do," Day handed him a second glassine envelope. Both envelopes contained a white power subsequently identified as heroin. Since the agent was still without change he entered a nearby bar, changed a ten dollar bill and paid the defendant the seven dollars owing on the second transaction. The only other witness to the exchange between the appellant and Wilder was federal narcotics agent Earl S. Stewart, Jr., who testified that he observed the events on the corner of Frankstown and Collier from a drug store across the street and the transaction at Frankstown and Lang from his car parked within viewing distance. The testimony of Stewart fully corroborated the account given by agent Wilder.

The above evidence of agent Wilder was taken on the second day of trial, Tuesday, August 30, 1966. On cross-examination the attorney for the defendant asked Wilder for the name of the informer who had accompanied him and had introduced the witness to Melvin Day. The Government objected, contending that such information was privileged. A lengthy discussion ensued between the trial judge and opposing counsel concluding the day's proceedings with a ruling by Judge Gourley in favor of defendant's position.

The third day of trial opened, absent the jury, with the prosecutor stating that the name of the informer had been given to the defense, although his whereabouts was known only to the Government. It appears that on the morning of August 31, defendant's counsel approached the United States Attorney with the names of two people, one of which he believed to be the informer, and the latter confirmed one of the names to be the special government employee (the informer in this case was a paid employee of the Federal Narcotics Bureau). However, before the

jury was recalled the prosecutor was allowed to introduce as a witness, William H. Mattingly, agent in charge of the Federal Bureau of Narcotics in Pittsburgh. The testimony of agent Mattingly dealt with the framework and operation of the narcotics syndicate in this country and in the city of Pittsburgh. He further testified as to the importance of informers in combatting the narcotics traffic and the fact that if informers are discovered they are, as well as being of no remaining use to the Narcotics Bureau, in jeopardy of losing their life or suffering grave bodily harm. After hearing the testimony of agent Mattingly Judge Gourley reversed the position he had previously taken, stating:

"I hold as a matter of law that under the facts and circumstances in this case, since the sale was not made by this accused-defendant to the informer, this rule of law does not have application, and I rule, Number 2, that the significance of this informer's testimony is such that it could place his life, or his body—it could place his life in jeopardy, or his body, and subject to physical harm or injury, and under all the circumstances the public interest requires that the identity of this informer not be divulged."

However, before the jury was recalled the trial judge had the informer brought to his chambers in the presence of only a United States Marshal and a representative of the clerk's office. There, without the knowledge or consent of the prosecutor or the defendant and his counsel, Judge Gourley questioned the informer to ascertain whether that special employee was in danger of physical harm if his identity and whereabouts were made public and whether the informer, if called as a witness, could be of any assistance to the defendant's cause. A record of this in camera proceeding was preserved and sealed so that only the federal appellate courts would have access to its contents. Following the interrogation of the informer the jury was brought into court and instructed by the judge that " * *

the name of this informer shall not be divulged."

The first point raised on appeal attaches error to the court's refusal to reveal to the defense the name and whereabouts of the informer. Appellant's sole defense was that of mistaken identity and the only defense witness was the mother of Melvin Day, who testified that her son had never owned a burgundy cap—the color of the cap allegedly worn by the person who had sold heroin to agent Wilder. Appellant contends that, since the informer was a material witness to the crime for which the defendant is charged, the defense should have been given an opportunity to question the informer as to any information he might have had that could have proved helpful. On the other hand, the Government maintains that under Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the disclosure of the informer's identity is privileged.

Roviaro v. United States, supra, involved a situation where the defendant, Roviaro, had allegedly sold narcotics directly to the informer. After Roviaro's arrest he was confronted with the informer who denied ever having seen the defendant. It was the Court's opinion that the privilege must give way "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, * * * ." 353 U.S. 53 at 60, 61, 77 S.Ct. 623 at 628. But the Court in Roviaro refused to hold that any given set of circumstances would automatically warrant disclosure. Speaking for the Court Mr. Justice Burton concluded:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration

the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. 53 at 62, 77 S. Ct. 623 at 628.

The first problem presented by the instant appeal concerns the standing of the so-called Roviaro privilege in view of the fact that the informer's name was made known to the defense attorney. The Court in Roviaro indicated that " * * * once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." 353 U. S. 53 at 60, 77 S.Ct. 623 at 627. Here, however, there is nothing in the record to show that anyone but defendant's attorney knew the informer's name and I feel that defense counsel here is not one "who would have cause to resent the communication." Further, when a person's identity is spoken of it means something more than just a name; it means his name plus the information necessary to locate the individual, such as his address and 'phone number. When the Supreme Court stated that the privilege is no longer available after the discovery of the informer's identity it cited, Sorrentino v. United States, 163 F.2d 627 (9 Cir. 1947), where the informer's name, address and place of employment had been disclosed in open court. Here the defense was given no specific information as to where the informer could be reached and was denied a continuance by the court in which to seek out the special employee. Thus, I believe that the revelation made by the Government to the defense counsel did not amount to a disclosure of the informer's identity as to render the Roviaro privilege inoperative.

No simple answer has yet been found to the informer dilemma which still continues to vex our courts. Surely the right of an accused to a fundamentally fair trial is diminished when he is refused access to an informer, where there is no assurance given to the court that the information possessed by the informer can in no way assist the defense. Set over against the accused's interest is the necessary reliance placed by law enforcement agencies, especially in narcotics cases, on the use of informers in securing inroads into areas of illegal activity that would be otherwise foreclosed without the use of special employees. Because of the dangers faced by informers, law enforcement officials have encountered difficulty in obtaining their services and as a result, when an informer's identity is revealed the public's interest, in protecting the flow of information to the police, suffers. Nor did Roviaro offer an adequate solution since the Supreme Court felt that " * * * no fixed rule with respect to disclosure is justifiable." 353 U.S. 53 at 62, 77 S.Ct. 623 at 628. This past term the Supreme Court in McCray v. State of Illinois, 386 U.S. 300 at 311, 87 S.Ct. 1056 at 1062, 18 L.Ed.2d 62 (1967), had reason to mention Roviaro, stating:

"What Roviaro thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials."

The prosecution's failure to disclose the name of an essential eyewitness was the subject of an opinion by this Court in United States ex rel. Drew v. Myers, 327 F.2d 174 (3 Cir. 1964), but there was no determinative stand taken on this problem since the disposition of that appeal was based on other grounds. Although other cases have considered the disclosure question, in light of the Supreme Court's policy of review on a case to case basis, I find a discussion of them unnecessary. I do note the position taken by the Government, citing United States v. Russ, 362 F.2d 843 (2 Cir. 1966), that a controlling issue should be whether or not the informer was an active participant in the crime. This premise is unacceptable simply because an informer, no matter how inert his role of participation, may still possess information relevant to a fair determination of the issues, which becomes for the court the ultimate consideration

upon which disclosure will either be granted or denied.

The importance of Roviaro is that it remitted to the discretion of the trial court the task of " * * * balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. 53 at 62, 77 S.Ct. 623 at 629. To this purpose the court becomes the arbiter of fundamental fairness in regard to the question of whether an informer's identity should be divulged. Judicial discretion in this area would even seem to extend to situations where the informer's testimony might help the accused. The Court in Roviaro stated:

"Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. *In these situations the trial court may require disclosure* and, if the Government withholds the information, dismiss the action." 353 U.S. 53 at 60, 61, 77 S.Ct. 623 at 628. (Emphasis supplied).

Thus, it appears that in no case is there a mandatory right of disclosure but rather only a permissive right at the discretion of the court. In emphasizing the importance of judicial discretion I do not take the position that disclosure may be denied where the informer's testimony is of vital significance to a fair determination of the defendant's guilt or innocence. Certainly a court's ruling of nondisclosure can only be justified where the informer's testimony, though helpful, does not relate to the deciding factors upon which a conviction or acquittal will rest and where the testimony does not outweigh the factual considerations favoring the public interest.

The real dilemma engendered by the informer problem lies in the practical incapacitation of the trial judge to look beyond a mere statement of the facts and evaluate the interests concerned. In most situations the accused will demand disclosure in the hope that the inform-

er's testimony can substantiate his defense. But if disclosure on a mere supposition is required in every instance the interests of law enforcement in combatting the illegal narcotics traffic will be detrimentally affected by the emasculation of its only effective weapon—the informer. The President's Commission On Law Enforcement And The Administration Of Justice had the following to say on the use of informers:

"The objectives of law enforcement are to reach the highest possible sources of drug supply and to seize the greatest possible quantity of illicit drugs before use. These are difficult goals, given the fact that drug transactions are always consensual. There are no complaining witnesses or victims; there are only sellers and willing buyers. The enforcement officer must therefore initiate cases. He must find and take up positions along the illicit traffic lanes. The standard technique for doing this is undercover investigation during which an officer assumes another identity for the purpose of gathering evidence or making a 'buy' of evidence. The use of informants to obtain leads and to arrange introductions is also standard and essential. An informant may or may not be a person facing criminal charges. If he is not, he may supply information out of motives of revenge or monetary reward. More typically the informant is under charges and is induced to give information in return for a 'break' in the criminal process such as a reduction of those charges. Frequently he will make it a condition of cooperation that his identity remain confidential." The President's Commission On Law Enforcement And The Administration Of Justice, The Challenge of Crime In a Free Society, p. 218.

Even so, if a trial court arbitrarily rules out disclosure in circumstances similar to the instant appeal, while the defense is mistaken identity and the informer is the only witness who could possibly lend credence to defendant's story, then a seri-

ous question arises as to whether the accused is denied due process under the Fourteenth Amendment. If a court is to impartially balance the conflicting interests it becomes quite evident that to do so requires some knowledge on the part of the judge as to what relevant information the informer actually possesses. But a trial judge is not privy to the activities or cognition of an informer and unless the court is aided by evidence from collateral sources it must indulge in a judicial guessing game and rule in favor of one interest at the possible expense of the other.

I think that the procedure employed by Judge Gourley can be of great value in coping with the equiponderant interests between the public and the accused. In an effort to insure a fair ruling on the issue of disclosure Judge Gourley ordered an in camera confrontation with the informer where the special employee was made to take the oath and testify concerning any danger he might personally encounter if his identity were revealed and the possible usefulness of his testimony to the defense. A transcript of that session was preserved so that the basis for the judge's ruling could be properly reviewed by an appellate court. This very procedure was suggested by Mr. Justice Burton's concurring opinion in Jencks v. United States, 353 U.S. 657 at 677, 77 S.Ct. 1007 at 1018, 1 L.Ed.2d 1103, where after quoting the "no fixed rule" language of Roviaro he states:

> "The trial judge exercises his discretion with knowledge of the issues involved in the case, the nature and importance of the Government's interest in maintaining secrecy, and the defendant's need for disclosure. By vesting this discretion in the trial judge, the conflicting interests are balanced, and a just decision is reached in the individual case without needless sacrifice of important public interests."

The dispute in Jencks dealt with the disclosure of reports made by Government agents who testified at criminal trials and there the majority ruled out any in camera inspection by the court; reasoning that the defense alone is equipped to determine how the material should be used in discrediting the Government's witnesses. Here we are dealing with the informer privilege and I consider it clear that an in camera proceeding is warranted for the reason that the power to rule on the question of disclosure is vested by Roviaro solely within the discretion of the trial judge, who must be allowed to rely on the investigative powers at his disposal if he is to render an enlightened and just decision.

The only foreseeable challenge to the rectitude of such in camera method might be urged by reliance upon Rule 26 of the Federal Rules of Criminal Procedure, which provides in part that "[i]n all trials the testimony of witnesses shall be taken orally in open court, * * *." In my judgment, an informer who testifies in secret before a judge is not a witness within the meaning of Rule 26 since the entire purpose behind the convening of an in camera session is to determine whether an informer will qualify as a witness who must testify in open court. Moreover, the "Notes of Advisory Committee on Rules", Fed.Rules Cr.Proc. Rule 26, 18 U.S.C.A., indicates that Rule 26 expressly continues those rules, albeit statutory, governing the admissibility of evidence and the competency and privileges of witnesses.

I agree with Judge Gourley that "* * * under all the circumstances the public interest requires that the identity of this informer not be divulged." An examination of the in camera record establishes to my satisfaction that the informer's testimony could not have substantiated the defense of mistaken identity and that it was not essential to a fair determination of the cause. Since I herein approve the procedure employed by the District Court I find no error in Judge Gourley's ruling on disclosure. I concur in the affirmance of the judgment of the District Court.