**UNITED STATES of America,**
**Appellee,**

v.

**Eugene Lamar JACKSON, Appellant,**

**UNITED STATES of America,**
**Appellee,**

v.

**Ruth JACKSON, Appellant.**

**Nos. 16375, 16376.**

United States Court of Appeals
Third Circuit.

Argued July 17, 1967.

Decided Oct. 17, 1967.

G. W. Wilde, Pittsburgh, Pa., for appellant Eugene Lamar Jackson.

Thomas F. Lamb, Pittsburgh, Pa., for appellant Ruth Jackson.

Lawrence G. Zurawsky, Asst. U. S. Atty., Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for appellee in both cases.

Before BIGGS, McLAUGHLIN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Eugene Lamar Jackson and his wife Ruth Jackson were both convicted on two counts for violating 26 U.S.C. Sections 4742(a) and 4744(a) (2), of the federal narcotics law. Although appellants were tried separately the questions presented by both appeals are similar in nature and will be treated together in this opinion.

The allegations of error have as their basis the common factual circumstances under which the illegal sales of narcotics were purportedly made. On March 15, 1966 Eugene Jackson was approached by undercover agent Norton J. Wilder of the Federal Narcotics Bureau and an informer, special employee of the Bureau. Agent Wilder testified that after the informer had introduced him to Jackson he negotiated and consummated a sale of marijuana with the defendant. On May 12, 1966 at about 6:30 P.M. agent Wilder and the informer went to the Jackson residence in Pittsburgh, Pennsylvania, for the purpose of furthering the investigation against Eugene Jackson. At the doorway they were met by the appellant, Ruth Jackson, who told the men that her husband was not at home. Wilder then spoke with Ruth Jackson expressing his desire to buy some "bush" (marijuana). She apparently agreed to the sale and produced two brown envelopes of the narcotic which the agent purchased. At their trials appellants' attorneys asked that the name of the informer be revealed so that he could be questioned to determine his possible usefulness as a witness for the defense. The trial judge ruled against disclosure in both instances and it is with that decision that Ruth and Eugene Jackson now assert error on appeal.

In United States v. Day (opinion filed October 10, 1967), 384 F.2d 464, this Court had the opportunity of discussing some aspects of the informer dilemma in light of the Supreme Court's decision in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

Rovario holds that the Government has a privilege of nondisclosure, but that the privilege must give way "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, * * *." 353 U.S. 53 at 60, 61, 77 S.Ct. at 628. However, the Supreme Court felt that " * * * no fixed rule with respect to disclosure is justifiable." and deposited with the trial judge the task of " * * * balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. 53 at 62, 77 S.Ct. at 628. In the informer situation the burden placed upon the trial judge is great since he must often balance conflicting interests without being aware of what relevant information, if any, the informer possesses. In Day the writer's opinion approved of a procedure employed by the District Court which I think made a substantial contribution to meliorating the disclosure dilemma. The other members of the Day panel refrained from passing upon the procedure followed by the District Court. There the trial judge conducted an in camera confrontation with the informer, who was made to take the oath and testify as to any relevant knowledge he had pertaining to the crime. A record of that in camera session was transcribed and sealed so that only an appellate court would have access to its contents. The advantage of the procedure is that it enables the court to view with a keener perspective the factual circumstances upon which it must rule and attaches to the court's ruling a more abiding sense of fairness than could otherwise have been realized.

■ At the trial of Eugene Lamar Jackson the informer was questioned in camera by the trial judge as to the possible physical danger he would encounter if disclosure were allowed and as to any testimony he could offer that might aid the defendant's cause.[1] An examination of the in camera record reveals that disclosure of the informer's identity would not have been helpful or essential to a fair determination of the cause; and therefore, it is our opinion that the trial judge's ruling was not erroneous.

■ The appeal of Ruth Jackson presents a different problem since there the trial judge did not have the opportunity to conduct an in camera interrogation of the informer. However, the district court's opinion notes that " * * * although the United States Marshal extended untiring efforts to have the informer in this proceeding brought to court for a special interrogation, * * * the United States Marshal was not able to secure the presence of said informer." Thus, absent any evidence showing that the informer would have offered testimony in support of the defense, we fail to see how appellant can base her appeal for a new trial on the ground that the informer's identity should have been disclosed when in fact that person had disappeared. The shallowness of this claim is further highlighted by the testimony of agent Wilder, that at the time Ruth Jackson made the sale of narcotics there was another woman present in the Jackson home. At the trial there were no witnesses called to support the defense of mistaken identity—that Ruth Jackson was not the person who sold marijuana to agent Wilder on the evening of May 12, 1966. Plainly, appellant is not prejudiced because the informer was not present to testify at her trial since there was reliable testimony indicating that another witness was available who could have sub-

---

1. Mr. Mattingly, agent in charge of the Federal Bureau of Narcotics, testified in this case, as he had in United States v. Day, 384 F.2d 464 (3 Cir. 1967) (concurrence op.), that if informers such as the one involved in this case are discovered, they are in jeopardy of losing their life or suffering grave bodily harm. Counsel for defendant conceded:

"I agree with your conclusion that in all probability this informer is going to indicate that his life will be in jeopardy if he testifies and faces the defendant in this particular case as an accuser." See also, United States v. Day, supra, at 464 (concurrence op.).

stantiated Ruth Jackson's story. We feel under all the circumstances that the decision of the trial judge was correct.

Also cited as error by both appellants was the refusal by the trial judge to permit the defense attorneys to argue to the jury that, since the Government did not produce the informer (a material witness), they (the jury) may infer that his testimony would be unfavorable to the Government's case. Appellants' contention rests on the rule in Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893), followed by this Court in United States v. Jackson, 257 F.2d 41 (3 Cir. 1958), that:

> "The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." 150 U.S. 118 at 121, 14 S.Ct. 40 at 41.

■■ It is sufficient to say that in the appeal of Ruth Jackson it was not within the Government's power to produce the informer since under the facts that individual had disappeared. But even if the informer could have been produced, as was the case in the trial of Eugene Jackson, that type of comment on the part of the defense would not be proper. The holding in Graves allows the presumption of unfavorableness to arise only when the Government fails to call someone who would qualify as a witness. When a court denies disclosure in accord with the Roviaro privilege it is in effect ruling that the Government has the privilege to disqualify the informer as a witness. Clearly, if the court allowed the defense counsel to make such inferential statements it would be penal-izing the Government for invoking its lawful privilege and would be taking the inconsistent position of condoning remarks which cut against the rationale of the court's previous ruling on disclosure —that the informer possessed no information relevant or helpful to the defense of the accused.

We have thoroughly examined the remaining contentions raised by appellants and find them without merit.

The judgments of the District Court will be affirmed.

BIGGS, Circuit Judge (concurring).

I concur fully in the opinion of the court insofar as it relates to the appeal in United States v. Ruth Jackson at our No. 16376.

In respect to the appeal of Eugene Jackson at our No. 16375, it seems to be an appropriate technique for a United States district judge to examine an informer in camera to discover whether or not his testimony is "highly material" or can be of substantial assistance to a defendant. Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623 (1957). But it is also my view that if the testimony of the informer, by the in camera examination, is shown to be "highly material" or of substantial assistance to the defendant the name of the informer must be disclosed to the defendant or the Government's case dismissed. In Eugene Jackson's case, the transcript of the testimony of the informer given in camera demonstrates that instead of the informer aiding Jackson's defense, the informer's testimony would be of very substantial assistance to the prosecution. Under these circumstances I join the majority in affirming the judgment against Eugene Jackson.