Ernest L. Signorelli, J.
The defendants made application to the court for an order suppressing certain oral admissions allegedly made and certain evidence seized incidental to the time of the arrest.
On November 2, 1970, Mueller’s Liquor Store, located in Miller Place, N. Y., was burglarized, and during the course of the burglary, its store window was broken and bottles of liquor were seized therefrom by the burglars.
Detective Cassidy was assigned the investigation of this case. He testified that, while investigating this matter, he spoke to one Walter Plate, an ex-convict, who told him he was present at or near the vicinity of the liquor store in the early morning hours of the day that the store was burglarized, and, at that time, observed a two-door hardtop automobile, color dark, of 1969 or 1970 vintage, occupied by two men, who later got out of the car, broke the store window, and took away bottles of liquor. He gave the following description of the burglars: one male was six feet, one inch tall with heavy, bushy hair, and the other male was of a slender build and was five feet, seven inches tall.
*326 Detective Cassidy further testified that, according to his knowledge, the defendant Ducz was known from time to time to operate a 1967 blue hardtop automobile which was owned by his girl friend, Diane Lymber. In addition, Detective Cassidy further stated that he was told by an unnamed confidential informant that the defendant Ducz had burglarized said liquor store.
After having accumulated the foregoing information, Detective Cassidy then went to question Ducz at the home of Diane Lymber. He arrived at her home accompanied by two other detectives, and as the front door was opened by Diane Lymber, he noticed the defendant in the house, who then proceeded to tell the detectives, ‘11 know why you are here, and I did it. ’ ’ The detectives then proceeded to follow the defendant into his bedroom and, while there, seized two bottles of liquor. Ducz was then advised as to his constitutional rights, and taken to the police headquarters for questioning. Incidentally, Diane Lymber was also taken to the precinct for questioning-.
After several hours of interrogation, Ducz allegedly admitted his involvement in this crime, and further, he implicated the two codefendants, Sautte and Murphy. When requested by Detective Cassidy to sign a written statement, he declined to do so.
Detective Cassidy then went to Murphy’s home, and after stating to him his Miranda rights, he then placed him under arrest and took him to the precinct for questioning. At the station house, although Murphy allegedly orally confessed his involvement in this crime, he, nevertheless, declined to sign a written statement.
The defendant Sautte, at the request of the police, was taken to the precinct by his father. When questioned concerning his knowledge of this crime in his father’s presence, he denied his involvement. His father was then told to leave the room by Detective Cassidy, after which, the defendant Sautte orally confessed. He, too, was asked to sign a written statement, but refused to do so.
The central issue to be resolved in this Huntley-Miranda-Morales (15 N Y 2d 72; 384 U. S. 436; 396 U. S. 102) suppression-type hearing is whether Detective Cassidy lacked probable cause for the detention and subsequent arrest of the defendant Ducz, and if .so, should the evidence seized and the oral confessions of all three defendants be suppressed?
Admittedly, the police, in this instance, gained entry to and proceeded to search the premises in question without the benefit of a search warrant. The police acted upon information supplied by Plate, a named informant and ex-convict, who con *327 veniently was present at the time the premises were burglarized, as well as upon information supplied by an unnamed informant who presumably told the police that Ducz was the perpetrator of this crime. The descriptions of the perpetrators of this crime given by Plate to the police did not coincide with the actual physical appearances of the defendants. Moreover, Detective Cassidy could not state how the unnamed informant came to the conclusion that Ducz was the perpetrator of this crime. He further testified that the said unnamed informant had not, in the past, supplied the police with information which eventually led to the arrest and conviction of other defendants.
During the course of Detective Cassidy’s cross-examination, it was brought out that he no longer possessed the written statements which the defendants declined to sign, because he had destroyed them. This certainly is a curious practice for an experienced police investigator to follow. In addition, his veracity was open to question when he testified that, immediately upon his entry into Diane Lymber’s home, the defendant blurted out and unhesitatingly admitted his complicity in this crime. In this connection, it is important to make special note that the defendant suffers from a serious handicap in that he stammers so badly that, while attempting to testify at this hearing, it took him approximately eight minutes to state his name and address.
Because of the state of this record, and in the interest of justice, the defendants made application to the court for the disclosure of the identity of the confidential informant. The rule forbidding the disclosure of an informant’s identity is predicated upon public policy. However, this is not a hard and fast rule, and there are exceptions to it. Essentially, the decision to reveal the name of the informant rests in the sole discretion of the Trial Judge, and it is the Trial Judge’s responsibility to balance the public interest against the defendant’s right to prepare his defense and to be accorded a fair trial. (Roviaro v. United States, 353 U. S. 53.)
Where a disclosure of an informant’s identity or the contents of his communication are relevant and helpful to the defense of the accused, or are essential to a fair trial, the privilege of nondisclosure must give way. During a hearing upon a motion to suppress, where the establishment of probable cause rests upon the communications of an informer, his identity must be revealed to show either:
a. that an informer does not exist, or
b. that if he does exist, he is unreliable, or
c. that the information he gave to the police was other than that testified to at the hearing.
*328 Where the foregoing factors exist, the informant’s identity should be revealed in order to avoid violating the fundamental requirements of fairness. (People v. Boniface, 37 A D 2d 728; People v. Malinsky, 15 N Y 2d 86.)
In the case at bar, the informant’s tip, standing alone, is insufficient to warrant a finding of probable cause for the detention and subsequent arrest of the defendant Ducz. There was no testimony to show that this informant was credible or that the information which the informant supplied was reliable. (Spinelli v. United States, 393 U. S. 410; People v. Horowitz, 21 N Y 2d 55.) The record is further devoid of any testimony showing reasonable corroboration of the reliability of the information supplied by the informant and the credibility of the informant. (People v. Schnell, 30 A D 2d 631; People v. Verrecchio, 23 N Y 2d 489; People v. Tatum, 36 A D 2d 635.)
To establish a proper balance between the public interest and the defendant’s right to a fair trial, I, accordingly, directed that a qualified disclosure of the informant’s identity be made to me so that I could conduct an in camera examination of the informant, it being further provided that said examination was to be conducted in secrecy, and the record thereof ordered sealed and not to be made public except upon further order of the court. This procedure has been sanctioned in other jurisdictions (United States v. Jackson, 384 F. 2d 825).
Defense counsel readily agreed to stipulate to the in camera examination of the informant by the court, but, unfortunately, the District Attorney adamantly refused to comply therewith. In the court’s judgment, this evidenced a total lack of good faith and, therefore, constitutes a denial of the defendant’s right to a fair hearing. (See Scher v. United States, 305 U. S. 251; see, also, rule 510 of Proposed Rules of Evidence for the U. S. Courts and Magistrates, as proposed by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States.)
I, therefore, find that there was not probable cause for the detention and subsequent arrest of the defendant Ducz. When there is an unlawful intrusion into private property, coupled with an unlawful detention and/or arrest, the resulting confessions procured from the defendants and the evidence seized must be excluded. The evidence which was seized ánd the oral confessions of these three defendants are ‘1 tainted ’ ’ in that they are the 11 fruit from the poisonous tree ’ ’ according to the doctrine enunciated in the case of Wong Sun v. United States (371 U. S. 471) and, therefore, should be suppressed.
The motion to suppress is granted.