MAGER, Judge
(dissenting):
Based upon a review of the specific facts and circumstances of this case it is my opinion that the judgment of conviction *585 and sentence should be affirmed. I therefore disagree with the majority’s analysis of the facts and law as enunciated in Hassberger v. State, Fourth District Court of Appeal, 321 So.2d 577 opinion filed October 10, 1975, and as applied to this case.
This appeal presents a novel situation of first impression concerning the disclosure of the real name and address of a confidential informant and the conducting of an “in camera” proceedings pertaining to such disclosure.
The defendant Grimes was one of several persons arrested on November 10, 1973 by officers of the Orlando police department for delivery of marijuana. Several days prior to the arrest, the confidential informant identified as “Ed” made contact with the defendant and arrangements were made for “Ed” to purchase a quantity of drugs at a stated location. At the time of the delivery of the drugs, “Ed” was accompanied by Officer Herrera of the Orlando police department. The entire transaction was observed and electronically monitored by Officer Chastain, of the Orlando police department. After delivery of the marijuana to “Ed” and Officer Herrera at the agreed upon location, a prearranged signal was given; the defendant and others (later to become co-defendants) were then arrested by Officers Herrera and Chastain.
Prior to trial and pursuant to the motion of a co-defendant, the lower court entered an order on February 4, 1974, directing that the identity of the confidential informant be disclosed. However, on February 6, after an in camera hearing held pursuant to the state’s ex parte motion, the court modified its prior order of disclosure dated February 4, 1974. In support of its motion the state submitted a written statement, in affidavit form, which asserted that the informant was currently working as an undercover operator on other drug related cases under investigation and that the disclosure of his real name and address “could constitute a great and immediate danger to his life”.[1] The effect of the modification was to relieve the state of the requirement to furnish the real name and address of the confidential informant directing, instead, that the confidential informant be referred to only as “Ed”. The court further ordered that the informant be made available to the defendant for discovery purposes and be present at the trial of the cause.[2]
Thereafter, on March 7, pursuant to a motion of a co-defendant, the court further modified its order of February 6, directing the state to furnish defense counsel with the F.B.I. rap sheet or other local criminal record of said witness “Ed” with any reference to his true name and address obliterated. Subsequently, based upon various motions filed by the defendants and the state [3] the court on March 14, modified its prior order of March 7 to the extent that *586 the state was directed to “furnish to counsel for defense only such information from said witness’s criminal record or F.B.I. rap sheet, if any, which might lead defense counsel to admissible evidence . . . ”.[4] The March 14 order directed the state to furnish the court with “any F.B.I. rap sheet or criminal record” of said witness “Ed”, if any, for an in camera inspection by the court. The March 14 order additionally directed the state to advise the defense that “if said witness has no criminal record or F.B.I. rap sheet, then state attorney may so indicate by affirmative statement or writing, filed of record in this cause . . . ”.
The record on appeal contains an exchange of correspondence between the state attorney’s office and the City of Orlando police department reflecting an inquiry by the state of the police department to ascertain whether any local criminal record or felony record exists with reference to “Ed” and a response by the police department indicating that no criminal record could be found on “Ed”. There is no indication as to whether the substance of this correspondence was communicated to any of the defendants prior to trial as contemplated by the aforementioned orders.[5] Various other pretrial motions to compel discovery were also filed pertaining to the production of tapes and other evidence of electronic surveillance of conversations between “Ed” and the other co-defendants of Grimes. The court granted these motions and directed the state to comply and subsequently defendant Grimes was advised that the tapes of the conversations would be made available to him prior to trial.
The cause came to trial on April 23, resulting ultimately in the conviction of defendant and a sentence to imprisonment at hard labor of six months to five years.[6]
At trial, the state called “Ed” as a witness. A review of the transcript of the testimony reflects that witness “Ed” was subject to extensive direct, cross and redirect examination.[7] The circumstances surrounding witness “Ed’s” participation in *587 the transaction giving rise to defendant’s arrest were dealt with at length as well as the fact that witness “Ed” performed undercover investigative work for law enforcement agencies for which he received payment in cash. The jury was clearly made aware of the nature of witness “Ed’s” role in the transaction as well as his “occupation”, i. e., “a paid professional informant”.[8] Witness “Ed” was also cross-examined with respect to his criminal record as follows:
“Q Okay. And you have testified in Court before?
“A Yes.
“Q Have you ever been convicted of a crime ?
“A No, sir.
“Q Been arrested?
MR. HART: Obj ect to that question. It’s beyond the scope of permissible—
THE COURT: Sustained.”
In addition to witness “Ed”, the state offered the testimony of officers Herrera and Chastain and officer Page, who was an evidence technician and a chemist for the Sanford crime lab. Other than the cross-examination of the state’s witnesses, the defendant produced no testimony in rebuttal of the state’s case.
After having been tried and found guilty of the offense charged, defendant filed a motion for new trial on April 24, 1974, contending that it was error for the court to have deprived the defendant of the right of cross-examination as to the true identity of witness “Ed”. As a result, the trial court issued an order on May 20, 1974, indicating that the court would conduct in camera proceedings to receive “additional evidence upon the necessity in the first instance of keeping the address and real name of the alleged undercover operator Ed confidential throughout the trial”.
On May 28, 1974, the court conducted an in camera proceeding and heard the testimony of the following witnesses: an investigator from the state attorney’s office, the witness previously identified as “Ed”, and officer Herrera. An assistant state attorney was present at the in camera proceeding and participated with the court in the interrogation of the witnesses. A transcript of the in camera proceedings was made and ordered sealed subject to further order of the trial court or examination by the appellate court.
On May 29, the trial court entered a detailed order denying defendant’s motion for a new trial indicating, inter alia, that the evidence adduced at the in camera proceedings confirmed and reinforced the court’s previous order of nondisclosure regarding the real name and address of witness “Ed”. The order indicated that the court was convinced from the evidence “that the maintenance and continuance of the confidentiality of the true name and address of the witness has been maintained throughout these proceedings and trial in order to minimize personal danger to said witness.
The court order also recited that the in camera proceeding had revealed that witness “Ed” had been arrested in connection with two felonies occurring in 1943 and 1957 upon which there were no convictions; and that witness “Ed” was involved in two minor traffic offenses in 1947. In assessing these disclosures from the standpoint of how such evidence would have aided and assisted defense counsel in his cross-examination of witness “Ed”, the trial court observed in part:
“. .. . All of these items being so remote in time that they would have afforded little, if any, grounds for impeachment had there been any legitimate way of getting the items admitted in evi *588 dence and this Court can think of no legitimate way.”
Having labored through the maze of pertinent motions, orders, occurrences and evidence we now direct our attention to the thrust of defendant’s contentions, i. e., that defendant’s right to a fair trial was violated: (1) by the trial court’s refusal to require the state to disclose the real name and address of the confidential informant and (2) by the trial court’s action in conducting in camera proceedings.
In the present factual context we are presented with a somewhat unusual set of circumstances not heretofore confronted by the Florida courts in attempting to resolve the “informant dilemma”. This court’s attention has not been directed to any Florida case, nor has our research revealed the existence of any Florida decision, involving the partial disclosure of a confidential informant, i. e., where the prosecution permits the informant to be deposed and presented at trial but seeks to protect the real name and address of such informant.
Although this case presents unique facts, the general principles of law relating to the disclosure of the identity of confidential informers are, nonetheless, pertinent and instructive.
In Treverrow v. State, Fla.1967, 194 So. 2d 250, 252, the Supreme Court of Florida set forth the following principles:
“ ‘As to the question when the privilege of nondisclosure applies and when an exception should be made and disclosure required, no "fixed rule * * * is justifiable.’’ Roviaro v. United States (353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639) supra. As the Supreme Court stated in Roviaro:
“The problem is one that calls for balancing the public interest in protecting the flow of information against the individual’s right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors.” (Emphasis supplied.) 353 U.S. 53, 62, 77 S.Ct. 628.
“ ‘Other factors which are considered relevant in determining whether disclosure is required are set forth in an annotation on the subject in 76 A.L.R.2d at page 262. Some of the factors are whether it was necessary for the prosecution to refer to the informer in the presentation of the case, or whether the informer’s existence was first brought out on cross-examination by the defendant; whether the informer was an “active participant” in the offense with which the defendant is charged or is a “mere informer” who supplies a “lead”; whether the accused admits or does not deny guilt; and whether there is independent evidence of the accused’s guilt. The foregoing factors are only some of those considered in determining whether the privilege is applicable and is not intended to be all inclusive.’ ”
A precise application of the foregoing factors is somewhat difficult because they contemplate a circumstance where no disclosure was made. Here, the informant was partially disclosed by being physically produced for discovery and for trial purposes. The pertinent consideration in the disclosure of the witness’s real name and address (and his criminal record) is what Treverrow refers to as the “balancing test”, i. e., balancing the public interest in effective law enforcement against the individual’s right to prepare his defense. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The specific circumstances of each case must be carefully examined to ascertain where the proper balance lies. Here, in particular, the court must weigh the significance and relevancy of the disclosure of the informer’s real name and address (and criminal record) to the defense of the accused and to the fair determination of the cause mea *589 sured against the public interest in protecting the flow of information to law enforcement.
The informer’s privilege, which has long been recognized by the court’s of this country and England, is in reality “the Government’s privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law”. Roviaro, supra; see also Harrington v. State, Fia.App. 1959, 110 So.2d 495; and United States v. Toombs, 497 F.2d 88, 5 Cir. 1974. The purpose of the privilege is “the furtherance and protection of the public interest in effective law enforcement”. As pointed out in Roviaro, supra, 77 S.Ct. at p. 627:
“. . . The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.”
It is generally recognized that the discovery and prevention of crime would be drastically impeded without the aid of confidential informants, particularly in combating the illegal narcotic traffic. United States v. Day, 384 F.2d 464, 3 Cir. 1967; Harrington, supra. The courts have come to recognize that there is no mandatory right of disclosure, but only a permissive right at the discretion of the court, taking into consideration the public’s interest as balanced by the fundamental requirement of fairness to the accused. Day, supra; Roviaro, supra; United States v. Hurse, 453 F.2d 128, 8 Cir. 1971; Treverrow, supra.
One of the most frequent situations where the “balancing test” has resulted in the disclosure of the confidential informer is where circumstances demonstrated that the confidential informer was not only an active participant in the transaction, but the sole and only participant (other than the accused) and the only witness to the transaction. Ricketts v. State, Fourth District Court of Appeal, 305 So.2d 296 opinion filed December 27, 1974; Roviaro, supra; Hurse, supra; Day, supra; Toombs, supra; United States v. Ferguson, 162 U.S. U.S.App.D.C. 268, 498 F.2d 1001, 1974; United States v. Barnett, 418 F.2d 309, 6 Cir. 1969; see also Monserrate v. State, Fla.App. 1970, 232 So.2d 444; English v. State, Fla.App.1974, 301 So.2d 813. These cases illustrate some of the instances where the interest of the accused’s defense or the fair determination of the cause outweighs the public’s interest in nondisclosure. See United States v. Barnes, 486 F. 2d 776, 8 Cir. 1973.
In applying the "balancing test” it is my opinion that the facts and circumstances of this case do not demonstrate that disclosure of the informant’s real name and address (and his criminal record) prior to or during trial was material to the accused’s defense or essential to a fair determination of the cause. See Jackson v. State, 307 So.2d 188, Third District Court of Appeal Case No. 74 — 1206 opinion filed January 28, 1975.
Nor was such nondisclosure an infringement upon the constitutional rights of the accused. In this regard I am not unmindful of the decision of the United States Supreme Court in Smith v. State of Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), recognizing that the Sixth Amendment guarantees a defendant a right of cross-examination; and that included therein is the right to cross-examine as to the witness’s actual name and address. In Smith the defendant was denied the right to ask the principal prosecution witness his name and address; the Supreme Court held that this limitation of cross-examina-joined in the court’s reversal but were care-of the Sixth Amendment and reversed the conviction.[9] However, as Mr. Justice *590 White (joined by Mr. Justice Marshall) pointed out in a concurring opinion in Smith, “the State gave no reasons justifying the refusal to answer a quite usual and proper question.” For that reason Mr. Justice White and Mr. Justice Marshall joined in the court’s reversal but were careful to point out that the right of cross-examination is not unlimited. As Mr. Justice White stated:
“In Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness. But in these situations, if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling. . . .”
The several recent federal decisions subsequent to Smith have recognized the “personal safety of a witness” exception to unlimited cross-examination as enunciated by Mr. Justice White with particular regard to the witness’s name, address and place of employment. In United States v. Palermo, 410 F.2d 468, 7 Cir. 1969, the United States Court of Appeals pointed out that “where there is a threat to the life of the witness, the right of the defendant to have the witness’ true name, address and place of employment is not absolute.” See also United States v. Varelli, 407 F.2d 735, 7 Cir. 1969. In United States v. La Barbera, 463 F.2d 988, 7 Cir. 1972, it was again pointed out, at p. 990:
. . The Smith court reaffirmed the earlier ruling in Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L. Ed. 624 (1931), which initially set the perimeters of cross-examination by imposing a duty on the court to prohibit questions threatening a witness’s Fifth Amendment rights as well as questions which, '. . . go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate [the witness]. . ’ Alford v. United States, at page 693, 51 S.Ct. at page 220. A further exception to unlimited cross-examination is represented by Justice White’s concurring opinion in Smith, as to inquiries which, upon a proper showing, endanger the personal safety of a witness. . . . ”
See also United States v. Smaldone, 484 F.2d 311, 10 Cir. 1973. Our own Fifth Circuit Court of Appeals, in United States v. Alston, 460 F.2d 48, 52 (cert. den. 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122) similarly observed:
“ . . . We think that a reasonable interpretation of this area of exception, acknowledged by Smith and Alford, to the usual requirement that the witness divulge background information would include an instance in which the physical safety of the witness or his family might be endangered by disclosure (citations omitted). The spectrum of cross-examination is wide and long but it is not infinite in scope. The trial court must have some authority to armor a witness against extra-judicial weaponry.”
See also United States v. McKinley, 493 F.2d 547, 5 Cir. 1974, and United States v. Ellis, 468 F.2d 638, 9 Cir. 1972.
*591 In the instant case the restriction placed upon cross-examination of the undercover informant as to his real name and address was consistent with the “personal safety” exception enunciated in the United States Supreme Court and federal decisions.
The state represented to the trial court that to reveal the real name and address of “Ed” would be a direct danger to his life and safety and would jeopardize other drug related investigations. The state further contended that to furnish the defendant with information regarding the informant’s criminal record could result in the discovery of the witness’s true identity. The evidence presented to the trial judge supported his determination that “disclosure to the defendants of the witness’s true identity and his address would have involved a substantial risk of physical harm, which would outweigh any disclosure of witness to defense counsel.”[10]
In reaching this conclusion I have not overlooked Rule 3.220(c)(2), which provides
“Disclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial, or a failure to disclose his identity will infringe the constitutional rights of the accused.”
The rule sets forth two conditions for disclosure: (1) where the informer is to be produced at a hearing or trial, or (2) where a failure to disclose his identity would infringe the constitutional rights of the accused.
The application of the rule depends upon the particular facts and circumstances of each case as measured by the balancing test set forth in Roviaro v. United States, supra, and the requisite “personal safety” limitation enunciated in Smith v. Illinois, supra. While the real identity of the informant was not disclosed in the instant case we are of the opinion that there was substantial compliance with these conditions as reflected by the availability of the informant prior to and during trial and the presentation of the witness for cross-examination except as permissibly limited by the “personal safety” exception.
With respect to the unavailability of the witness’s criminal record because of the representation that such information would lead to the discovery of the witness’s real identity, the trial court carefully considered and evaluated the necessity for disclosing this information in light of its usefulness to defense counsel measured by the potential risk and harm to the witness. In the court’s order denying defendant’s motion for new trial, the court made reference to two felony arrests in 1943 and 1957 and two minor traffic offenses in 1947. The trial court properly concluded that “these items being so remote in time they would have afforded little, if any, grounds for impeachment had there been any legitimate way of getting the items admitted in evidence and this Court can think of no legitimate way.” The recent decision of the First District in this state in Braswell v. State, 306 So.2d 609, filed January 28, 1975, amply supports the trial court’s determination as to the remoteness of the offenses and the discretion vested in the trial court in excluding, for impeachment purposes, convictions remote in time.
It is important to observe that, here, there were no felony convictions or for that matter convictions of any “crime” which might have served as a legitimate basis for impeachment. Prior arrests or accusations of crime have been held to be *592 properly excluded from cross-examination. 35 Fla.Jur., Witnesses, sec. 234. Moreover, a violation of a municipal ordinance has been held not to constitute a “crime” so that a record of conviction of a municipal offense is not admissible to discredit a witness. 35 Fla.Jur., Witnesses, sec. 35. See also Braswell v. State, supra.
Noteworthy is the fact that during defense counsel’s cross-examination of witness “Ed” at trial he was asked whether he had ever been convicted of a crime to which he responded in the negative; even had the withheld information pertinent to the witness’s criminal record been furnished to defense counsel its utilization would have been properly restricted so that further inquiry based on such information zvould have been inappropriate, infra.
Therefore, it was not error for the trial court to refuse to require the state to disclose the witness’s real name and address or his criminal record. Whatever error might have resulted from the inability of defense counsel to have access to the witness’s criminal record would under the facts of this case and as hereinabove indicated be characterized as harmless. More particularly, the testimony of officers Herrera and Chastain, independent of the testimony of the confidential informant, was sufficient to establish delivery of marijuana.
In addition to contending that it was error for the trial court to refuse to disclose the true name and identity of the informer and the existence of any criminal record, defendant questions the propriety of the in camera proceedings conducted by the court. The trial court relied upon Rule 3.220 (i), which provides
“(i) In Camera Proceedings. Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or any portion of such showing to be made in camera. A record shall be made of such proceedings. If the court enters an order granting the relief following a showing in camera, the entire record of such showing shall be sealed and preserved in the records of the court, to be made available to the appellate court in the event of an appeal.”
This rule is new and contains subject matter not previously covered by any other rule. I am not aware of any Florida decision interpreting this rule; however, there are several recent federal decisions discussing in camera proceedings in a variety of circumstances which decisions we feel are most helpful and instructive. Alderman v. United States, 394 U.S. 165, 89 S. Ct. 961, 22 L.Ed.2d 176 (1968) ; Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); United States v. Danesi, U.S.C.C.D.Conn.1972, 342 F. Supp. 889; United States v. Hurse, supra; United States v. Day, supra; United States v. Jackson, 384 F.2d 825, 3 Cir. 1967; United States v. Toombs, supra. See also Commentary to Standard 4.6, American Bar Association Standards relating to discovery and procedure before trial, October 1970, pp. 204-6.
The federal courts have consistently upheld the validity of in camera proceedings. In United States v. Hurse, supra, the 8th Circuit Court recognized that even an absence of a rule pertaining to in camera proceedings “the courts would have the inherent power to hold an in camera proceeding where the circumstance warrants so that both the informer witness and the public policy in favor of effective law enforcement may be observed while still making a judicial determination of the need for disclosure where essential to a fair trial”. As the court pointed out in United tates v. Day, supra, at p. 470:
“. . . If a court is to impartially balance the conflicting interests it becomes quite evident that to do so requires some knowledge on the part of the judge as to what relevant information the informer actually possesses. But a trial judge is not privy to the ac *593 tivities or cognition of an informer and unless the court is aided by evidence from collateral sources it must indtdge in a judicial guessing game and rule in favor of one interest at the possible expense of the other.” (Emphasis added.)
The very procedure set forth in Fla.R.Cr. P. 3.220(h) was approved in principle in United States v. Jackson, supra, wherein the court observed in part:
. . A record of that in camera session was transcribed and sealed so that only an appellate court would have access to its contents. The advantage of the procedure is that it enables the court to view with a keener perspective the factual circumstances upon which it must rule and attaches to the court’s ruling a more abiding sense of fairness than could otherwise have been realized.”
See also United States v. Danesi, supra. The in camera proceeding is, therefore, a valuable tool to assist the trial judge in fully evaluating the scope of the balance between the public interest and the rights of the defendant. The integrity and correctness of the in camera trial court determination that the identity of a confidential informant ought not to be disclosed is “checked and balanced” by the preparation and preservation of a transcript of the in camera proceedings for later review by the appellate court. United States v. Palermo, supra; United States v. Varelli.
It is recognized that the defendant is placed at a disadvantage by the inability to be present at the in camera proceedings much the same as the disadvantage of not knowing the real name of the confidential informant. Accordingly, a court must be extremely circumspect in conducting an in camera proceeding as prescribed by Rule 3.-220(i) with due regard to the admonitions of Rule 3.220(c)(2), supra, and the principles set forth in Roviaro v. United States, and Smith v. Illinois.[11]
Based upon the specific factual circumstances, I am of the opinion that the trial court did not err in conducting in camera proceedings with respect to the issue of the informant.
However, I would make several specific observations regarding the particular in camera proceedings and the manner in which they were conducted. The first in camera proceeding held on February 6, pursuant to the state’s ex parte motion wherein the state sought to be relieved of the obligation to furnish the real name and address of its informant, was predicated upon an affidavit executed by an assistant state attorney. The affidavit did not contain any matters which we would deem to have been the proper subject of an in camera proceeding inasmuch as the record reveals that the affidavit was in fact later furnished to defense counsel. When it became apparent to the court that the only matters to be brought out at the in camera proceeding were the assertions contained in the affidavit the in camera proceeding should have either terminated or been opened to defense counsel. It must be assumed that nothing else transpired during that proceeding inasmuch as the only item furnished to this court under seal is the affidavit; no other record of the proceeding has been forwarded to this court.
However, I am satisfied that the matters contained in the affidavit (pertaining to the safety of the informant) were of a sufficient nature upon which to predicate *594 an order of nondisclosure; therefore, to the extent that the hearing was conducted in camera I would consider this not to have been harmful to the preparation of defendant’s case.
The other in camera proceeding (which more closely resembles a proceeding Rule 3.220(i) was intended to embrace) was conducted pursuant to defendant’s motion for a new trial. A transcript of the proceedings was properly preserved and transmitted to this court for review. Upon a careful review of that transcript it is my view that the trial court’s decision to relieve the state of the requirement of not disclosing the witness’s real name and address was amply supported by the testimony presented in that proceeding. (See discussion, supra, pertaining to the court’s order denying defendant’s motion for new trial.) It is of concern, however, that this in depth proceeding was conducted after the trial. It would seem more consistent with Rule 3.220(i) and the concept of fairness for such a proceeding to be conducted prior to trial (or during trial where unusual circumstances necessitate) so as to avoid the possibility of discovering that any earlier decision might have been erroneous because it was based upon insufficient information. It would seem somewhat cumbersome to limit disclosure, proceed with trial, and then be confronted with a post trial in camera proceeding which might demonstrate that the nondisclosure was erroneous thereby requiring the grant of a new trial.
Notwithstanding the observations made in Hassberger v. State, supra, the courts have recognized the “personal safety of a witness exception” to unlimited cross-examination; furthermore, our rules of criminal procedure recognize and provide for the conduct of in camera proceedings. In my opinion, the trial court’s decision to permit the informant’s identity to remain undisclosed on the basis of personal safety and the in camera proceedings conducted in connection therewith is amply supported by the particular facts in evidence and the pertinent judicial decisions and rules of judicial procedure.
Our appellate disposition should be par ticularly mindful of the factual circumstances in the case at hand and of the proposition that we should not substitute our judgment for that of the trier of fact; merely because an appellate court might have interpreted the facts differently from that of the trial court does not render the trial court’s determination erroneous when such determination is supported by the evidence.
The determination made by the trial court and the position which is enunciated in this dissenting opinion is not a blanket pronouncement for all times that confidential informants may testify without being identified or that all in camera proceedings will be approved. The import of this decision is the recognition of the existence of certain precedents and principles and the application of those precedents and principles to a specific factual circumstance.
There have been, there are and there will continue to be instances requiring disclosure of the identity as well as the true name and address of a confidential informant just as there have been, there are and will continue to be instances not reqtdring the disclosure of the identity as well as the true name and address of confidential informants. The same will hold true for in camera proceedings.
The instant decision is determined by the instant 'facts. The next decision will be determined by the next set of facts.
A review of the specific factual circumstances in their totality reflects that the defendant’s right to a fair and impartial trial and his ability to properly prepare his defense was not constitutionally impaired.
Having considered all of the points raised by the defendant and being of the opinion that no reversible error has been *595 demonstrated, the judgment appealed from should be affirmed.[12]
Ordered upon Appellee’s October 22, 1975 Petition for Rehearing and alternative application for certification of question of great public interest; the Petition for rehearing is denied, and the application for certification of the following question as one of great public interest is granted:
Can the identity (actual name and address) of a confidential informant be kept secret when the trial court finds (by means of an in camera proceeding on the subject), that the informant’s personal safety is at stake — when that informant appears as a witness in the criminal proceeding?

. This written statement consisted of an affidavit sworn to by Officer Chastain and apparently was furnished to defense counsel after the ex parte, in camera, proceeding.

. In the brief filed in this appeal counsel for defendant Grimes stated that the deposition of confidential informant “Ed” was in fact taken on February 15, 1974, but that trial counsel was unsuccessful in ascertaining the real name and address of the confidential informant at the time of said deposition.

. The record on appeal contains a motion filed by the state seeking to amend the court’s order of March 7 with particular regard to the requirement that the state furnish defense counsel with an “F.B.I. rap sheet”. That motion, although bearing a stamp of the Clerk of the court reflecting that such motion was “filed” on March 20, 1974, which would make it after the court’s March 14 order dealing directly with the F.B.I. rap sheets, was in all likelihood presented to the court on or prior to March 14. This assumption is based on the fact that the court’s order of March 14 makes specific reference to the state “having filed a motion to amend a previous order of this court which was entered on March 7, 1974” and the state’s motion bearing the caption “Motion to Amend Previous Court Order”. The discrepancy between the stamped “filing date” and what seems to have been the day on which the motion was actually presented *586 to the court merits comment and clarification inasmuch as the court’s order of March 14, modifying its order of March 7, was predicated on matters substantially embodied within the state’s motion. Moreover, the appellate brief filed by the defendant refers to the fact that the state’s motion of March 20, 1974, “was never ruled on by the court”. No doubt appellate counsel was as understandably confused as this court about some of the chronology of the preliminary proceedings before the trial court. A reading of the trial court’s order of March 14 can lead to no other conclusion but that the state’s “motion to amend” was actually before and considered by the court prior to the entry of its March 14 order.

.The state’s motion to amend the order of March 7 also contained the following assertions :
“(4) That any information contained on a ‘rap sheet’, if one does exist, could he used to discover the true identity of ‘Ed’ and would he a direct danger to Ms life and safety and would further jeopardize other drug related investigations now pending.
“(5) That information contained in a ‘rap sheet’, if any exists, would only go to the creditability of ‘Ed’ and where previous convictions, if any, are admitted, this point would be moot.”

. Note, however, that the appellate brief of defendant asserts that counsel “was never furnished with the criminal records of ‘Ed’ ”. It therefore might be assumed that the information pertaining to the existence vel non of “Ed’s” criminal record was not available to defense counsel.

. There has been considerable difficulty in reconstructing the chronology of the pre-trial events because of the apparent inconsistency between filing dates of motions appearing in the record on appeal and the actual dates on which the court heard such motions (see fn. 3). The problem was somewhat compounded by the fact that neither appellate counsel for the defendant nor counsel for the state participated in the proceeding below. Hopefully, the pertinent chronology as set forth accurately reflects what actually transpired.

. The testimony of all witnesses begins at p. 14 of the transcript and concludes at p. 196 of the transcript; of the total of 182 pages of testimony 58 pages directly related to witness “Ed” or slightly under one-third of the entire trial testimony.

. Witness “Ed” refused to describe himself as a “professional paid informant” preferring to be described as a “professional paid investigator”.

. It is important to note in contrast to the instant case that in Smith, the informant, whose real name and address were withheld, was the only witness to the crucial events *590 giving rise to defendant’s arrest and conviction. The witness entered a restaurant with marked money and emerged with a bag of heroin allegedly purchased from petitioner who testified he had refused to sell the witness the narcotics but another man in the restaurant was believed to have made the sale.

. We ought not to be concerned with the degree of the witness’s effectiveness in other drug investigations or the degree of the risk and safety to him resulting from the state’s decision to physically produce the witness for trial and the witness’s willingness to appear. This, no doubt, is a determination best left to the wisdom of the agencies and individuals affected. What is of concern and significance is the propriety of the determination of nondisclosure in light of the particular facts, circumstances and considerations.

. It might be well to note that there is somewhat of a paradox in regard to the burden placed upon the state and the defendant with respect to nondisclosure. The government enjoys the privilege of nondisclosure with the burden placed upon the defendant to demonstrate an exception to this rule (Treverrow v. State, supra), whereas the defendant has the right to cross-examine a witness as to his real name and address with the burden being placed on the state to demonstrate an exception to this rule (United States v. Alston, supra.)

. The undue length of this dissent is occasioned by the unusual facts and circumstances and novel points involved.