**UNITED STATES of America,
Appellee,**

v.

**Berton COMISSIONG, Appellant,
No. 869, Docket 34558.**

United States Court of Appeals,
Second Circuit.

Argued July 7, 1970.

Decided July 30, 1970.

James Schreiber, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. New York, New York City, and Jack Kaplan, Asst. U. S. Atty., of counsel), for appellee.

Kenneth Kase, New York City, for appellant.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

Berton Comissiong appeals from a judgment of the District Court for the Southern District of New York convicting him, after a bench trial, of two violations of the familiar statute, 21 U.S.C. §§ 173 and 174, which forbids receiving, concealing, and facilitating the transportation and concealment of heroin. Comissiong does not deny his guilt; the sole issues are whether the narcotics agents had probable cause for the arrest leading to two searches which disclosed the heroin, and, in that context, whether the court was justified in refusing to require disclosure of the name of the Government's informant at the pretrial suppression hearing.

Although the testimony of the narcotics agents contained some discrepancies, due in large part to confusion whether a particular building on Prospect Avenue in the Bronx was at 162nd Street or 167th Street, the court was warranted in finding the facts to be as follows:[1] Agent Byrne's interest in Comissiong was stimulated by an informer who had previously given "reliable information" concerning persons involved in the narcotics trade. One item of information had led to the arrest of someone wanted by the FBI for a murder charge. On other occasions, the number of which was not given or sought, he had given information that "checked out." Byrne could not recall receiving any information from the informer that did not check out.

The informer told agent Byrne, about a fortnight before the arrest, that Comissiong, who was known to him only as "Lefty," had been convicted for a federal narcotics violation about six years ago, and owned a 1967 Oldsmobile the license number of which the informer passed on to the agent. He added that Comissiong's method of operation would be to arrive by himself at 1359 Lyman Place in the Bronx, take orders for narcotics, depart in the company of a female, drive down to a building on Prospect Avenue, leave the female in the car, enter the building, procure narcotics, return to the car, and turn over the narcotics to the female who, he believed, would not be searched. Byrne found that the number supplied by the informer was of a car registered in Comissiong's name. Proceeding from that, he ascertained that Comissiong indeed had a six-year old federal narcotics conviction and a state arrest for narcotics as well. On January 3, 1968, the informer told Byrne that Comissiong would be doing business that night in his accustomed way.

Byrne and several other agents took up surveillance. Comissiong performed the scenario through departure from 1107 Prospect Avenue. There was then a minor variation due to his entering a small restaurant to purchase a package of cigarettes. The agents arrested him on his return to the Oldsmobile. A search on the spot disclosed in his right hip pocket a cellophane package containing 64 grams of heroin. A further search at Federal Detention Headquarters revealed a small cellophane package in his right shoe containing .125 grams of heroin.

Although agent Byrne began by testifying that when Comissiong returned to the automobile, "he didn't appear to be carrying anything," and that the agent did not see the defendant commit a crime, Byrne later said that as he was approaching the car, he saw Comissiong "put a cellophane-type package into his right back pocket." While he did not

1. The suppression hearing was before Judge Bonsal, the trial before Judge Croake; our account draws on both sources.

know exactly what this was, it didn't look like a pack of cigarettes. Although Judge Bonsal in his oral opinion denying suppression did not resolve this issue of what the agents had seen, there was further evidence on the subject at trial. Byrne again testified that as Comissiong was entering the car, the agent "observed a cellophane package being placed into his back pocket." Also agent Pallatroni, who was observing from across the street with special binoculars and participated in the arrest,[2] saw Comissiong place in his right hip pocket a package "contained in some kind of foil; it was rather big, maybe about six inches high and three inches wide, and rather thick," a description which evidently tallied with the envelope found in the search. While agent Pallatroni couldn't be sure what was in the package, he was certain it was not a pack of cigarettes because it was too big and "a person wouldn't put cigarettes in his back pocket." Judge Croake found that Comissiong had indeed been observed placing a cellophane packet in his right rear pocket.

■ Although the Government has not argued the point, recitation of the facts raises the question whether the case falls within United States v. Moon, 351 F.2d 464 (2 Cir. 1965), cert. denied, 383 U.S. 929, 86 S.Ct. 936, 15 L.Ed.2d 848 (1966). We there held that when agents had deferred an arrest until they had witnessed "what they had good reason to believe to be a delivery of narcotics" quite apart from any information they had received, questions as to the reliability or even the existence of an informer were rendered moot. We think the case falls short of this, although not by much. In *Moon*, the agents observed the delivery of the traditional "bundles of glassine envelopes" and also saw that

these were "filled with a white substance"; moreover there was the additional factor of the recipient's flight. Still the fact of the agents' having seen as much as they did here diminishes the importance of the informer's tip in establishing the existence of probable cause.

■■ Postponing the question of the disclosure, we think it plain that the informer's story sufficed to fill whatever lacuna the agents' observation had left. The testimony with respect to the informer's previous reliability is on a par with the character reference held sufficient in Draper v. United States, 358 U.S. 307, 309, 79 S.Ct. 329, 331, 3 L. Ed.2d 327 (1959), to wit, that the agent had "always found the information given * * * to be accurate and reliable." There is no absolute requirement that such information should have allegedly resulted in convictions. So too the detailed scenario and its fulfillment come under the approval of *Draper* rather than the condemnation of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See United States v. Dunnings, 425 F.2d 836 (2 Cir. 1969). Although the informer did not say in so many words that he had seen Comissiong engage in the depicted activity, "the report was of the sort which in common experience may be recognized as having been obtained in a reliable way," 393 U.S. at 417–418, 89 S.Ct. at 589, and the agents' observation corroborated it up to the point when Comissiong entered the car and was arrested before he had any opportunity to pass the narcotics on to his female companion. We thus reach the issue whether the judge erred in not requiring the Government to disclose the identity of the informer at the suppression hearing.[3] Since the briefs cite

---

2. Since Pallatroni took part in the arrest, we need not determine whether observations made by a nonparticipating agent, which have not been communicated to the agent making the arrest, can be considered on the issue of probable cause. See People v. Horowitz, 21 N.Y.2d 55, 59–60,

286 N.Y.S.2d 473, 476–477, 233 N.E.2d 453 (1967).

3. When request for disclosure was first made, the judge said he would not require it "[a]t this point." When the request was renewed at the close of the hearing, he simply reiterated his previous ruling.

none of the relevant decisions of this court, it may be educational, particularly for the Government whose default in this regard is truly incredible, for us to deal with the subject at greater length than would otherwise be justified.

The starting point for discussion is Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We say starting point because, as is frequently forgotten, the holding, 353 U.S. at 60–61, 77 S.Ct. at 627, "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [to withhold disclosure of the identity of informers] must give way," was addressed to a situation where disclosure was claimed to be necessary on the issue of guilt. In significant contrast to the instant case, the informer in *Roviaro* "had helped to set up the criminal occurrence and had played a prominent part in it," 353 U.S. at 64, 77 S.Ct. at 629. Access to his testimony might have enabled the defense to raise questions concerning the defendant's knowledge of the contents of the package he was transporting, an essential element of the charge against him, as well as the possibility of entrapment, whereas in the case before us the sole function of the informer was to alert the police that criminal activity was afoot. However, the Court did state in support of its conclusion:

> Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.[11]

Four cases were cited in footnote 11. Only one was a Supreme Court decision, Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938). That case held disclosure was *not* required since the legality of the officers' action did "not depend upon the credibility of something told but upon what they saw and heard," and distinguished United States v. Blich, 45 F.2d 627 (D.Wyo.1930), where justification of the arrest was "sought because of honest belief based upon credible information." Wilson v. United States, 59 F.2d 390 (3 Cir. 1932), did accord with the statement, as did United States v. Keown, 19 F.Supp. 639 (W.D.Ky.1937). But the other case cited, United States v. Li Fat Tong, 152 F.2d 650 (2 Cir. 1945), in which Judge A. N. Hand wrote for a bench including Judge L. Hand and Judge Clark, held directly the contrary,[4] citing *Scher* for the proposition that disclosure would be required only when it was "necessary or desirable to show the prisoner's innocence." *Id.* at 652.

In McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court dealt directly with the problem here presented. The decision at least establishes that disclosure of the identity of an informer is not *constitutionally* required even though his information is the sole basis for probable cause. However, the opinion went beyond this. Seemingly it indicated sympathy with the Illinois rule that disclosure would not be invariably required even under such circumstances, see People v. Durr, 28 Ill.2d 308, 192 N.E.2d 379 (1963), cert. denied, 376 U.S. 973, 84 S.Ct. 1138, 12 L.Ed.2d 87 (1964), a view which was characterized as "consistent with the law of many other States," 386 U.S. at 305, 87 S.Ct. at 1059, and with the New Jersey rule, State v. Burnett, 42 N.J. 377, 201 A.2d 39 (1964), allowing "the judge who

4. Although the *Li Fat Tong* opinion made some point of the fact that the New York agent who made the arrest had obtained his information from a Chicago agent, the latter had gotten his information from an unidentified informer.

hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believable witness." In any event it destroyed all force in the statement we have quoted from *Roviaro* by saying, 386 U.S. at 311–312, 87 S.Ct. at 1062.

> What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court even approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. * * *

> In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search.[5]

The recent decisions in this circuit begin with United States v. Robinson, 325 F.2d 391 (2 Cir.1963). There Chief Judge Lumbard, speaking for a panel including Judge Hays and the writer, after quoting the dictum from *Roviaro,* required disclosure in a case where, as in *Draper,*[6] the justification for a warrantless arrest hung almost entirely on the statement of an informer. The problem was again considered in United States v. Elgisser, 334 F.2d 103 (2 Cir.), cert. denied, Gladstein v. United States,

379 U.S. 881, 85 S.Ct. 151, 13 L.Ed.2d 87 (1964), where, although there had been no disclosure, we affirmed a conviction since the arresting officers had probable cause without the informer's tip. Judge Waterman, who wrote the lead opinion, at one point expressed the view that disclosure was demanded "where information received from an informer is essential to the establishment of probable cause," 334 F.2d at 110. However, he later narrowed this to a case "where the existence of probable cause depends solely upon the reliability of an informer." *Id.* Chief Judge Lumbard made clear in a concurrence that he believed disclosure was required even in warrantless arrests only when, as in *Robinson,* "the arresting officers knew nothing more than what the informant had told them," 334 F.2d at 111. The writer concurred in both opinions. These decisions were made before the shadow of the *Roviaro* dictum had been dissipated by *McCray.*[7]

■ After *McCray,* the subject was further considered in a thoughtful and comprehensive opinion by Chief Judge Lumbard writing for a bench including Judges Waterman and Smith, United States v. Tucker, 380 F.2d 206 (2 Cir. 1967). That case was like this in that material other than the hearsay information "went most if not all the way toward justifying the arrests," 248 F. Supp. 911, 916 (S.D.N.Y.1965), quoted at 380 F.2d at 210. The opinion adopted a rule that, even in the case of a warrantless arrest, disclosure would be required only when the informer's story constituted " 'the essence or core or main bulk' of the evidence brought forth which would otherwise establish proba-

---

5. The Court completed the job by saying in a footnote, also number 11, 386 U.S. at 311–312, 87 S.Ct. at 1062, that the statement in *Roviaro* "was clearly not necessary for decision" and that "the precedent upon which this dictum was grounded furnishes only dubious support."

6. The Government had no problem about disclosure in *Draper* since the informer had died a few days after the arrest.

7. Mention should also be made of United States ex rel. Coffey v. Fay, 344 F.2d 625 (2 Cir. 1965), which likewise was decided before *McCray.* There, in dealing with a state trial, Judge Waterman declined to express an opinion on whether the prosecution would have to disclose the name of the informer if probable cause could be established only by recourse to the informer's statements plus corroborating circumstances not in themselves sufficient. *Id.* at 634 n. 5.

 

ble cause," 380 F.2d at 212.[8] The *Tucker* rule was followed in United States v. Shyvers, 385 F.2d 837 (2 Cir.1967), cert. denied, 390 U.S. 998, 88 S.Ct. 1203, 20 L.Ed.2d 98 (1968); United States v. Cappabianca, 398 F.2d 356, 358–359 (2 Cir.), cert denied, 393 U.S. 935, 946, 89 S.Ct. 294, 21 L.Ed.2d 271 (1968); United States v. Malo, 417 F.2d 1242 (2 Cir. 1969); and United States v. Colon, 419 F.2d 120 (2 Cir.1969). While the matter is thus settled in this circuit, we add that in our view *Tucker* strikes a proper balance between the desire to afford a fair opportunity to challenge police conduct and the need for protecting informers not merely to maintain sources of information, particularly in regard to organized crime, but often to guard against bodily harm to them and their families. The independent evidence, even though not adequate of itself to establish probable cause, constitutes a sufficient voucher against fabrication, although obviously not a complete one.

Once the applicable rulings of this court are known, decision here is easy. Both Byrne and Pallatroni saw the occurrence of something which, although it did not alone amount to probable cause, came very near it. Beyond that, agent Byrne, aided only by the license number supplied by the informer, had ascertained Comissiong's name and, working from that, had verified the information concerning a prior narcotics conviction. It seems most unlikely that all this plus the scenario were fabricat-

ed. See United States ex rel. Coffey v. Fay, *supra*, 344 F.2d at 634; United States v. Tucker, *supra*, 380 F.2d at 212.

Affirmed.

---

8. It also made the valuable suggestion, 380 F.2d at 214, that the court should defer its ruling on the request for disclosure until all the evidence is presented. The court could then properly determine whether the evidence other than the hearsay information supplies "the essence or core or main bulk" of probable cause. If the court's ruling was unfavorable to the Government, the Government could reconsider its refusal to disclose. Evidently that was what the judge did here, see fn. 3, although it would have assisted if he had explained this more clearly to counsel. The *Tucker* opinion did not

discuss whether in a case where disclosure was required, it would suffice if this were made, at least in the first instance, only to the judge who, if he thought proper, might examine the informer *in camera*. See United States v. McKinney, 379 F.2d 259, 264 n. 4 (6 Cir. 1967); United States v. Day, 384 F.2d 464, 466–470 (3 Cir. 1967) (concurring opinion); United States v. Jackson, 384 F.2d 825 (3 Cir. 1967), cert. denied, 392 U.S. 932, 933, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968), the two latter dealing with the problem at the trial stage.