**UNITED STATES of America**

v.

**Dennis DANESI.**

**Crim. No. 13031.**

United States District Court,
D. Connecticut.

March 22, 1972.

Supplemental Opinion April 28, 1972.

Thomas F. Maxwell, Jr., Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Benson A. Snaider, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS

NEWMAN, District Judge.

Defendant is charged with possession of an unregistered shotgun, which was seized from his car on July 14, 1971. The basic uncontroverted facts are as follows. During the period immediately preceding July 14, there had been a feud between patrons of Del's Club and the Emerald Bar, both located in New Haven. About one week prior to July 14, defendant had been the victim of a shooting in this area. On the night in question, defendant left Del's Club at about 1 a. m., drove off and was stopped a few blocks away by New Haven police. In his car, the police found a .45 pistol, for which defendant had a local pistol permit, and a shotgun which, because of its short barrel length, was required to be federally registered and was not.

The other facts are in sharp dispute. The government's version is based on the following testimony of Patrolman Nichols of the New Haven Police Department. At 5:30 p. m. on July 14, he received a phone call from an informant, who had on three previous occasions supplied him with reliable information. The informant told him that there was going to be trouble between patrons of Del's and the Emerald that night and that some of them had weapons. Danesi's name was not mentioned. Nichols told the informant to be at Del's that evening, and also told him how he could later reach Nichols by telephone. Nichols reported this information to Lieutenant Morrone of the New Haven Police Department, who assigned him to surveillance of Del's Club that evening. From his post across the street, he saw defendant enter Del's at about 10 p. m., and observed that defendant was not carrying anything when he entered. At about 11:30 or 11:45 p. m., Nichols received a second call from the informant, who was now inside Del's. The informant told Nichols that defendant had a .45 revolver in his belt and a shotgun in a brown paper bag. Nichols saw the informant leave the bar ten or fifteen minutes after the call. Nichols saw the defendant leave the bar at about 1 a. m., carrying a brown paper bag, out of which protruded about 1½ inches of a gun stock. Nichols was about fifty or sixty yards from defendant at the time of these observations. He notified Lieutenant Marrone by radio of these observations, and Lieutenant Morrone dispatched another member of the surveillance team, Sergeant Muller, to stop Danesi's car. Sergeant Muller arrested defendant and seized the shotgun.

Defendant offered evidence to controvert parts of this story. Joe DellaQuila, a part owner of Del's, testified as follows. He was tending bar on the night of July 14. At some point after 11 p. m. defendant arrived and asked for the return of a shotgun he had previously loaned to the bar for ornamental purposes. The weapon was then in the bar's basement, and DellaQuila went downstairs to get it after tending bar for an additional five or ten minutes. The gun was in two pieces, and too long to fit entirely into a single paper bag, so DellaQuila placed it in one bag, with a second bag on top, in a manner that concealed the contents of the resulting package. The placing of the gun in the paper bags took place in the back room of the bar, with no one but DellaQuila and defendant present. All this took place at about 11:30 p. m. or midnight. DellaQuila thought that defendant left immediately after the return of the shotgun, but he did not see him go out the door.

Defendant testified that he arrived at the bar at about 12:40 or 12:45 a. m., asked DellaQuila for the shotgun, and received it, totally covered by two paper bags, as DellaQuila testified. He then went outside, put the package in his car, and drove off.

James Gell, another patron of Del's and a friend of defendant's, testified

that he and his wife were at Del's on July 14, that defendant entered at about 12:45 a. m., and stayed only five or ten minutes.

■ There can be little doubt that if the police version is accepted, the eye-witness report of the informant, who had previously given reliable information, is sufficient to provide probable cause to validate the seizure of the shotgun [1]. Defendant's essential contention is that since the informant's report constitutes the main portion of the probable cause, the informant should be disclosed so that his testimony can aid in resolution of the factual dispute between the government and the defendant. Two facts are at issue: (1) whether the shotgun was ever seen by the informant (and whether the end of the stock was seen by Nichols) or whether it was totally concealed from anyone's view when placed in the two paper bags in the back room, and (2) whether defendant arrived at 10 p. m., as Nichols testified, or around 12:45 a. m., as defendant and Gell testified, a time by which Nichols says the informant had already left the bar.

Arguing from these factual disputes, defendant basically contests the existence of the informant [2]. Of course, he does not dispute that the facts allegedly reported by the informant—defendant's possession of both guns in the bar—did not occur. His point is that police knowledge of these facts did not come from an informant prior to the arrest, but were reconstructed after the police made the arrest and found the weapons. In support of this claim, he offered to prove that the police were stopping and searching all cars that left the vicinity of Del's that night. To determine whether the informant exists, defendant has asked for disclosure of his identity.

---

1. The government has not clearly advanced its legal theory to support the seizure of the shotgun. Lieutenant Morrone testified that he gave the order to stop the defendant because he was carrying the .45 pistol and because he had in his possession a shotgun which he believed was under standard size. It may be that there was probable cause to arrest defendant for carrying a pistol for which the police did not reasonably believe a local permit had been issued. There was testimony that the police were unable, at that time of night, to check pistol permit records. In any event, Connecticut police have statutory authority to arrest upon probable cause to believe a felony has been committed, Conn.Gen.Stat. § 6-49, and this authority is apparently not limited to state felonies. Since the observations of the informant and Nichols, if credited, established that a short-barreled shotgun was being carried in a paper bag, this provided probable cause to believe that defendant had violated 26 U.S.C. § 5861 (d), the offense for which he now stands indicted. *See also* 26 U.S.C. § 5848(1) (defining "firearm" as shotgun was barrel of less than eighteen inches for purposes of National Firearms Act). This probable cause would support both an arrest of defendant with a valid search of his car (in which he was arrested) as incident to the arrest and also a search of his car wholly apart from the arrest.

2. Initially, it might seem that setting up of the surveillance at Del's Club on this particular evening would be sufficient to establish the informant's existence. As Judge Friendly has explained the facts of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) :

    Narcotics Agent Marsh would hardly have been at the Denver Station at the exact moment of the arrival of the train Draper had taken from Chicago unless *someone* had told him *something* important, although the agent might later have embroidered the details to fit the observed facts.

    Williams v. Adams, 436 F.2d 30, 38 (2d Cir. 1970) (dissenting opinion), reversed on *rehearing en banc*, 441 F.2d 394 (2d Cir. 1971) (June 12, 1972) reversed 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (emphasis original). In the case at hand however, the stake-out was arranged prior to the first alleged phone call from the informant, probably because of the past trouble in the neighborhood. Lieutenant Morrone testified, "Prior to this information from Officer Nichols, we had resolved that we were going to conduct a stakeout. It was after deciding to conduct this stakeout that I spoke to Officer Nichols. We had assigned several men to a location opposite the restaurant, where they woud be able to surveil the front and side door of the restaurant."

In this Circuit, disclosure of the identity of an informant is not required unless the informant's story provides the " 'essence or core or main bulk' of the evidence brought forth which would otherwise establish probable cause." United States v. Tucker, 380 F.2d 206, 212 (2d Cir. 1967); United States v. Comissiong, 429 F.2d 834, 838–839 (2d Cir. 1970). While the precise meaning of terms like "bulk" or "core" is elusive, Judge Friendly in *Comissiong* suggested that disclosure is not required when "the independent evidence, even though not adequate of itself to establish probable cause, constitutes a sufficient voucher against fabrication, although obviously not a complete one." 429 F.2d at 839.

Thus, the initial question here is, did the informant's story constitute the "bulk" or "core" of probable cause. The independent evidence relied upon by the government consists wholly of Patrolman Nichols' observation of defendant (1) leaving the bar, (2) carrying a paper bag, (3) out of which a gun stock was protruding. The first two factors are colorless on the issue of probable cause. Absent the allegation of an informant's tip, the observation of a man leaving a bar carrying a paper bag fails to rise even to the level of "suspicion."

There remains for consideration Nichol's purported observation from fifty to sixty yards, under normal street light illumination at night, of 1½ inches of what he claimed to recognize as a gun stock protruding from the paper bag defendant was carrying. If this testimony is credited, it might well render the informant's report something less than the core of the probable cause. But the authenticity of the observation places at least a strain on credulity. Even if the officer is to be credited, the only plausible interpretation would be that he was able, at that distance and illumination, to discern 1½ inches of something protruding from the bag and, having received the informant's report, surmised that what he saw must have been the stock of a shotgun. As with the bag itself, the observation of 1½ inches of some protruding object does not go enough of the way toward establishing probable cause to make the informant's report less than the core of the probable cause. *Compare* United States v. Comissiong, *supra*, at 838–839 (officer's observation of cellophane package, plus his knowledge of defendant's prior narcotics conviction, went "most if not all the way" toward establishing probable cause). But the question persists whether the officer's version of seeing 1½ inches of some object is to be credited at all. It would be circular bootstrapping to credit his observation because it jibes with the informant's report, and then credit his account of the informant's report because of his observation. Both his claim of an informant's report and his claimed observation of the protruding object could have been reconstructed after the arrest and seizure. Nothing that he testified to guards against this possibility [3]. While

3. It should be noted that the inquiry here is not whether the facts observed by the police officer sufficiently corroborate the informant's report to establish that the report should be credited. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). That inquiry presupposes the existence both of an informant and his report. The inquiry here is whether there are circumstances that make it sufficiently likely that an informant did make a report. Facts that resolve one inquiry will normally not be probative on the other. Moreover, different kinds of facts are probative in each inquiry. The inquiry as to the credibility of an informant's report will normally turn on police *observations*. For example, the fact that Nichols saw the defendant carrying a paper bag out of the bar would, if it had been presented to a magistrate as part of a warrant application, have justified a conclusion by the magistrate that the informant's report, if actually made, should be credited. But police observations will normally not establish the existence of an informant or his report. Nichols' observation of defendant carrying the paper bag would not have aided a magistrate in determining whether the

the officer may well have been testifying truthfully, and I make no finding that he was not, the circumstances are such that "fair determination" of his credibility in testifying as to the existence of both the informant and the informant's report requires further exploration. Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). These circumstances are that (1) the informant's report is the core of the probable cause, (2) defendant's evidence has fairly put in issue the existence of the informant, and (3) the informant's report could easily have been reconstructed after the arrest and resulting seizure.

■ The further exploration required is not necessarily disclosure of the informant's identity. As *Roviaro* teaches, there can be no fixed rule with respect to disclosure, 353 U.S. at 62, 77 S.Ct. 623. Defendant must show that disclosure would be relevant and helpful to defense on a material issue in the case, not just that it would aid him generally in his defense. Roviaro v. United States, *supra*; United States v. Franzese, 392 F.2d 954 (2d Cir. 1968), vacated in part on other grounds 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

■■ Moreover, even if the requisite relevance and helpfulness are established, a District Court still has wide discretion in fashioning a remedy, especially at this stage in the proceeding, when guilt or innocence is not at issue. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); United States v. Malo, 417 F.2d 1242 (2d Cir.

1969), cert. denied 397 U.S. 995, 90 S.Ct. 1135, 25 L.Ed.2d 403 (1970). See also Revised Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 510(c) (3) (March 1971). In deciding whether to order disclosure, a court must weigh the importance of informants to the law enforcement process and must bear in mind that disclosure of a particular informant's identity may well end his future usefulness to the police.

Given these concerns, many courts that have found the informant's identity to be necessary for a fair determination of the issue of probable cause have not ordered public disclosure. A number of opinions suggest that disclosure of the informant's identity *in camera,* or *in camera* questioning of the informant, can allow the judge to make an informed decision about the suppression motion without destroying the informant's future usefulness to the police. United States v. McKinney, 379 F.2d 259, 264 n. 4 (6th Cir. 1967); United States v. Day, 384 F.2d 464, 466–470 (3rd Cir. 1967) (concurring opinion); United States v. Jackson, 384 F.2d 825, 827 (3rd Cir. 1967), cert. denied 392 U.S. 932, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968); United States v. Winters, 420 F.2d 523, 524 (3rd Cir. 1970); United States v. Jackson, 422 F.2d 975 (6th Cir. 1970); United States v. Strange, 52 F.R.D. 542 (E.D.Tenn.1970). Cf. United States v. Lopez, 328 F.Supp. 1077, 1090–1092 (E. D.N.Y.1971). The proposed federal rules of evidence take a similar approach, permitting the trial judge at the suppression hearing stage to provide for disclosure of the informant's identity *in camera* or to make any other order

---

informant's report was actually made, or whether the report was fabricated to provide an excuse to inspect the contents of the observed bag. On the other hand, the inquiry as to the existence of an informant's report will often turn on police *actions,* such as showing up where an informant has said something unusual will occur. See note 2, *supra.* Here there is no police action which tends to establish the existence of the informant. The

surveillance had been set up in advance of the alleged report. The fact that Nichols saw the defendant leave the bar, in which the informant allegedly had said he was present, may be an observation that would tend to prove the informant's report credible (even though Nichols himself saw the defendant enter the bar before receiving the alleged tip), but it is not probative of whether the informant exists and it is no safeguard against fabrication.

which justice requires. Revised Proposed Rule 510(c) (3).

■ In the case at hand, such measures short of public disclosure seem especially warranted. It is the existence of the informant that is basically at issue. If the informant does exist, that fact can be shown as well *in camera* as in open court. At the same time, the future use of the informant will be preserved to the police. An *in camera* proceeding is especially desirable here, since there appears to be no likelihood that the testimony of the informant would be relevant or helpful to the defense at trial.

Accordingly, the government is given two weeks from the date hereof to make appropriate arrangements for the *in camera* examination of the informant. Such examination will be conducted by the Court, with counsel for neither side present. The transcript of the examination will be sealed for inspection only by reviewing courts. *See* United States v. Jackson, *supra*; United States v. Day, *supra*. This procedure will not disclose the identity of the informant to the defendant or his counsel. If the examination should develop reasons why disclosure is warranted under Roviaro v. United States, *supra*, the government will be given a further opportunity to decide whether to disclose the informant's identity to the defendant or to keep his identity secret and suffer any resulting adverse judicial decision. *See* United States v. Tucker, *supra*, 380 F.2d at 213–214. If the government declines to avail itself of the option for *in camera* examination of the informant, the motion to suppress will be granted, since the record as presently developed does not provide a sufficient basis for a fair determination on the issue of probable cause.

SUPPLEMENTAL MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS

After this court's decision of March 22, 1972, which concluded that the motion to suppress would be granted unless the Government elected to make the informant available for *in camera* examination, the Government made appropriate arrangements for an *in camera* examination of the informant. That examination has been made. Only the informant, a court reporter and myself were present. The reporter's notes are hereby ordered to be sealed and maintained in the custody of the Clerk's office, and the transcript is hereby ordered to be sealed and made available for inspection only by reviewing courts.

■ The informant has established to my satisfaction that the testimony of Officer Nichols at the hearing on the motion to suppress concerning where the informant was, what the informant observed, and what the informant reported to Officer Nichols should all be credited. The issue of credibility raised by the defendant's evidence has thus been resolved in favor of the Government. The credible evidence establishes that the New Haven police had an eye-witness observation from an informant who had been shown to be reliable on previous occasions. The observation was that the defendant had possession of a shotgun with a less than standard size barrel, being carried in a paper bag. Officer Nichols' own observation confirmed that the defendant was carrying an object in a paper bag and that the paper bag was placed in defendant's car. The combination of the informant's report plus Officer Nichols' observation abundantly established probable cause to believe that the defendant was violating 26 U.S.C. § 5861(d). This probable cause furnished an entirely adequate basis to arrest defendant and seize the shotgun from the car as incident to the arrest, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and also to search for the gun in the car and seize it, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Accordingly, the motion to suppress is denied.