**UNITED STATES of America, Appellee,**

v.

**Victor ROSARIO, Defendant–Appellant.**

**No. 959, Docket 79–1356.**

United States Court of Appeals, Second Circuit.

Argued April 1, 1980.

Decided Nov. 3, 1980.

---

Mel A. Sachs, New York City, for defendant–appellant.

Diane F. Giacalone, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. for the Eastern Dist. of New York, Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for appellee.

Before VAN GRAAFEILAND and NEWMAN, Circuit Judges, and GOETTEL, District Judge.*

* Hon. Gerard L. Goettel, District Judge of the Southern District of New York, sitting by designation.

VAN GRAAFEILAND, Circuit Judge:

Appellant was convicted, after a plea of guilty in the United States District Court for the Eastern District of New York, of knowingly and intentionally possessing with the intent to distribute approximately one–eighth of a kilogram of cocaine. The cocaine was found in appellant's apartment when Drug Enforcement Administration agents searched it with his consent. At the time of the plea, it was agreed that appellant preserved his right to appeal Judge Bramwell's denial of his motion to suppress the drugs seized by the government and admissions made concurrently therewith. Basic to Judge Bramwell's denial was his finding that appellant's arrest which preceded the seizure and admissions was not unconstitutionally defective. This finding was based on a simple set of facts.

On May 3, 1979, Special Agent Stuart Stromfeld and several other DEA agents had appellant under surveillance. At approximately 11:00 p.m. Stromfeld was standing in a doorway on Vector Avenue in Queens near a parked automobile in which two men were seated. Other DEA agents were stationed nearby. While Stromfeld was so concealed, he saw appellant leave a building carrying something cupped in his hands, cross the street, and enter the parked car. Stromfeld then left the doorway and approached the car at the rear side window on the driver's side. From this position he watched while appellant showed the two men in the car what he had been surreptitiously carrying, a clear plastic bag containing a white or light–colored powder.

As appellant was displaying the bag to the man in the rear seat, he saw Stromfeld, who displayed his gun and badge at the car window. Appellant immediately concealed the bag between his legs. When he got out of the car and spread his legs in response to Stromfeld's command, the bag fell to the ground. It contained cocaine.

After being advised of his rights, appellant consented to the search of his apartment, also located in Queens. There the DEA agents saw a large sum of money and additional drugs in a bedroom and apprehended appellant's roommate who was in the apartment. Appellant and his roommate then gave written consent to a search of the apartment, in the course of which additional drugs were found. Both appellant and his roommate admitted their implication in the purchase and sale of drugs.

■ Challenging the legality of his arrest, appellant quarrels with the district court's finding that Stromfeld saw white powder in the plastic bag. Appellant points to testimony by Stromfeld that there were some lumps in the bag and suggests that Stromfeld might reasonably have concluded that the bag, which was so furtively transported to the car and concealed between appellant's legs, contained camphor balls or white mints. However, Stromfeld, an agent with twelve years experience, was familiar with the white powdery appearance of cocaine, and the sum and substance of his testimony was that the contents of the bag had that appearance. Indeed, because the material in the bag was in fact cocaine, it is unlikely that it would have any other appearance. Certainly we are not prepared to hold that the district court's finding of fact was clearly erroneous.

■ Given this factual finding, the legality of the arrest is fully supported by the surrounding facts. A plastic bag which contains a substance that looks like cocaine, which is carried furtively to a car containing two men at 11:00 p.m., and which is displayed for inspection by the two men, is not likely to contain camphor balls or white mints. The district court did not err therefore in concluding that there was probable cause for appellant's arrest. *See United States v. Canieso*, 470 F.2d 1224, 1228 (2d Cir. 1972).

■ Following his arrest, appellant indicated a desire to cooperate with the police and did in fact cooperate for a period of several weeks. The district court found that appellant voluntarily consented to the search of his apartment, and that finding has ample support in the record. There was no basis therefore for suppressing the incriminating evidence uncovered during the search. *See United States v. Watson*, 423 U.S. 411, 424–25, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976).

■ There is no merit in appellant's contention that there was no factual basis for his plea and that it was not voluntarily and intelligently made. Appellant admitted that his roommate and codefendant intended to sell the drugs found in the apartment and that appellant was holding the drugs for him in the apartment. Colloquy between the district judge and appellant showed that appellant was informed concerning aiding and abetting in the commission of an offense. Appellant's plea was knowingly made and factually supported.

We likewise find no merit in appellant's contention that the district court did not comply with Rule 11 requirements, in that he failed to advise appellant that he faced a mandatory minimum jail sentence and a possible lengthy special parole term. Appellant did not face a mandatory minimum jail sentence, *see* 21 U.S.C. § 841, and he was advised that a special parole term might be for his lifetime.

The judgment appealed from is affirmed.

GOETTEL, District Judge (dissenting):

On the evening of May 3, 1979, appellant Victor Rosario, while sitting with two other persons in a parked car on Vector Avenue in Queens, New York, was arrested by agents of the Drug Enforcement Agency ("DEA"). During the ensuing "pat down," the agents discovered cocaine in his possession. After being advised of his constitutional rights, Rosario indicated a willingness to cooperate with the agents, informed them of the source of the narcotics, and consented to a search of his apartment. During this search the agents arrested an accomplice and discovered a large amount of cash, one–eighth of a kilogram of cocaine, and certain narcotics paraphernalia. Subsequently, both Rosario and his accom-

plice were indicted for possession with intent to distribute 150 grams of cocaine and for conspiring to do so.[1]

The Government presented only one witness, Special Agent Stuart Stromfeld of the DEA, at the customary suppression hearing. Agent Stromfeld testified that while on duty the night of May 3, at approximately 11:00 p. m., he had observed Rosario enter a building located on Vector Avenue. He stated that soon thereafter Rosario, apparently holding something cupped in his hands, left the building and entered a nearby car. Agent Stromfeld testified that he then walked up to the car on the side opposite to the side Rosario had entered and, attempting to position himself in a "blind spot" where he would not be seen, looked through the rear window of the car. He testified that while so positioned he saw Rosario holding, and then showing a plastic bag–a "baggie"–to the other two persons in the automobile. The agent initially testified that the baggie appeared to contain a white–colored powder. Upon further examination, however, the agent modified his testimony and stated that the baggie actually contained a number of round lumps surrounded by some powder, the color of which could have been a "light tan or a light yellow or it could have been many different colors." At the time he observed the contents of the baggie, it was late in the evening and, evidently, very dark. Apparently there was no light on in the car.

As he showed the baggie to the other occupants of the car, Rosario noticed that they were being watched. Realizing that he had been observed, Agent Stromfeld, who had earlier taken out his badge and gun, opened the door of the car and, with the help of other agents on the scene, arrested all three occupants. During the "pat down" of Rosario, as mentioned earlier, the agents found the plastic bag, which Rosario apparently had hastily tried to conceal.[2] This bag was eventually determined to contain cocaine.[3]

On cross–examination, defense counsel attempted to learn why the agents had been observing Rosario. While the witness acknowledged that the agents had followed Rosario from his home to the Vector Avenue address, the Government objected to defense counsel's attempt to ascertain the reasons why Rosario was being watched. Nor was the duration or extent of the apparent surveillance made known. The agent further testified that his arrest of Rosario was based on his one observation of what was taking place in the darkened car.

Since Rosario's consent to the search and the search itself closely followed his arrest without any significant intervening event, the crucial question in determining the propriety of all of these events is whether the arrest was made with probable cause.[4] If the arrest itself was not proper, the evidence gathered as a result of the arrest would have to be excluded as being the fruits of an illegal arrest. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *United States v. Tucker*, 610 F.2d 1007 (2d Cir. 1979).

The district court, finding that the DEA agents had had Rosario "under surveillance that day concerning drug transactions" and

---

1. The codefendant, Harold Zafra, pled guilty and did not file an appeal.

2. The agent testified that he saw Rosario, as he started to get out of the car, put the hand in which he had been holding the baggie between his legs and that, when Rosario spread his legs for the "pat down," the bag fell from between his legs. Both of these observations, however, occurred after Rosario was already under arrest.

3. Rosario was indicted only for possession of the cocaine that was found in his apartment after the search, and not for the cocaine discovered during the "pat down" immediately after his arrest.

4. Probable cause to make an arrest, it has been held, "exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

had seen Rosario hold up a plastic bag containing a white powder, and that the secreted bag dropped from between Rosario's legs when he stood up, held that there was probable cause for the arrest. Such findings of fact, however, as limited as they are, are not borne out by the record.

A careful examination of the record reveals nothing that would explain why or for how long the DEA agents were watching Rosario. In fact, the record indicates no more than that Rosario had been followed for a short period immediately preceding his arrest. Even if that can be considered "surveillance" there was no evidence whatever as to why it was thought that he might be involved in "drug transactions." The sole testimony offered to prove that the substance in the plastic bag was a white powder was modified on cross–examination. Thus, it became apparent that the agent, to the extent that he was able to see at all into the darkened car, saw no more than Rosario holding a plastic bag, which the agent thought was filled with some light–colored round lumps. Finally, while the secreting of the bag between Rosario's legs when he saw the agents might have probable cause significance, it occurred after an armed arrest was in progress. *See United States v. Strickler*, 490 F.2d 378 (9th Cir. 1974); *United States v. Lampkin*, 464 F.2d 1093 (3d Cir. 1972); *United States v. Troutman*, 458 F.2d 217 (10th Cir. 1972). (This Court has indicated that the presence or absence of a drawn gun is significant in determining whether an arrest has taken place. *United States v. Oates*, 560 F.2d 45 (2d Cir. 1977).)

Of course, a determination as to probable cause by the trial court is entitled to some weight. However, the instant situation involved a motion to suppress evidence obtained after an arrest had been made without a warrant, and not the granting of a warrant prior to arrest. Moreover, this Court need not defer to the findings of the trial court if the facts in the record reveal, as they do in this case, that the findings are inaccurate or unsupported. *See Jackson v. Statler Foundation*, 496 F.2d 623 (2d Cir. 1973), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *see United States v. Bradshaw*, 515 F.2d 360 (D.C.Cir. 1975), *cert. denied*, 424 U.S. 956 (1976).

The question of whether probable cause exists to make an arrest in a situation such as the instant one has been addressed by this Court and by others on a number of occasions. In *United States v. Moon*, 351 F.2d 464 (2d Cir. 1965) (per curiam), it was held that an informer's tip that the defendant was selling narcotics, plus the observation by narcotics agents of the defendant transferring a glassine envelope to an individual, who thereafter fled, provided probable cause to make an arrest. Similarly, in *United States v. Comissiong*, 429 F.2d 834 (2d Cir. 1970), it was held that the combination of an informer's tip and the observation by agents of a suspicious "cellophane–type" package on the person of the defendant provided a sufficient basis to make an arrest. In reaching this conclusion, the court noted that "the informer's story sufficed to fill whatever lacuna the agents' observation had left." *Id.* at 836. In *United States v. Devenere*, 332 F.2d 160 (2d Cir. 1964), the combination of agents overhearing the defendant engage in a highly suspicious (drug related) conversation and the observation of a glassine bag, provided probable cause for an arrest. *See United States v. Lee*, 501 F.2d 890 (D.C.Cir.1974); *United States v. Canieso*, 470 F.2d 1224 (2d Cir. 1972); *Redmon v. United States*, 355 F.2d 407 (9th Cir. 1966). *See also United States v. Santana*, 485 F.2d 365 (2d Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); [5] *United States*

5. In *United States v. Santana*, it was found that agents who had under surveillance a restaurant known as a meeting place where narcotics transactions took place, and who observed the defendant, whom they knew to be a major narcotics violator, twice enter the restaurant and emerge on each occasion carrying a brown paper bag (which the agents knew as a "hallmark" of the narcotics trade), had a sufficient basis under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to stop the defendant and require identification.

*v. Baltazar*, 477 F.Supp. 236 (E.D.N.Y. 1979).[6]

This question has also been addressed by the courts of New York State, where a consistent line of cases hold that the mere observation of the passing of glassine envelopes (even though they are a "telltale" sign of a narcotics transfer) is insufficient to establish probable cause. *See People v. Corrado*, 22 N.Y.2d 308, 292 N.Y.S.2d 648, 239 N.E.2d 526 (1968); *People v. Oden*, 36 N.Y.2d 382, 368 N.Y.S.2d 508, 329 N.E.2d 188 (1975). *People v. Oden, supra*, held that such an observation by a police officer, even though taking place in a high crime area in which narcotics were known to be present, was inadequate. *See also People v. Bryant*, 37 N.Y.2d 208, 371 N.Y.S.2d 881, 333 N.E.2d 161 (1975); *People v. Davis*, 36 N.Y.2d 280, 367 N.Y.S.2d 256, 326 N.E.2d 818, *cert. denied*, 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 109 (1975). Only when such an observation is accompanied by other solid evidentiary fact, such as evidence that "the defendant dropped or threw the envelopes, thereby evincing a consciousness of guilt upon seeing the approaching uniformed officer," have the New York courts found that a finding of probable cause may be made. *People v. Alexander*, 37 N.Y.2d 202, 204, 371 N.Y.S.2d 876, 877, 333 N.E.2d 157, 158 (1975).

In the instant action, not even the common allegation that the arrest took place in a high crime area known for narcotics transactions is present. *See United States v. Magda*, 547 F.2d 756, 759 (2d Cir. 1976) (Motley, J. dissenting), *cert. denied*, 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977).[7] What the record reveals, in essence, is that Rosario was arrested because an agent saw, as best he could in a dimly lit area, Rosario in possession of a light–colored, lumpy material contained in a plastic sandwich bag–not even the "telltale" glassine envelope. Such facts, standing alone, are simply insufficient to constitute probable cause for arrest.

It may be reasonable to assume that the agents had some grounds for following Rosario and conducting surveillance, if indeed they were carrying out those activities; it is also likely that the grounds related to a suspected drug transaction; and such grounds may have provided the "lacuna the agents' observations had left." *United States v. Comissiong, supra*, 429 F.2d at 836. However, no such evidence was ever introduced. The Government opposed allowing any testimony on this point and the record is silent as to any reason why Rosario was being watched. Indeed, what is truly involved in this appeal is not whether an arrest was made without probable cause, but, rather, how little evidence the Government can introduce to justify a warrantless arrest and still survive a motion to suppress.

It is clear that the majority opinion, like the district court below, strains the factual findings to avoid the imposition of the exclusionary rule. This is understandable. After years of application, even the most vigorous proponents of the exclusionary rule can show no improvement in law enforcement practices. From personal observation, it appears that its major effect has been to either free guilty suspects or to elicit perjured testimony from law enforcement officials. Neither of these results is in the public interest. Strangely, however, the ardent civil libertarians show little interest in the realities of the application of the exclusionary rule, while pressing for its greater application. Caplan, *A Fifteen Year Journey Through a Tangled Thicket of the Law*, National Law Journal, Septem-

---

**6.** In *United States v. Baltazar*, unlike the instant case, the arresting agent, before making the arrest, observed the defendant attempt to hide a clear plastic bag containing a white powder, as well as engage in other suspicious conduct.

**7.** It should be remembered that this is not a stop and question case such as that presented in *United States v. Magda, supra*. *See United States v. Santana, supra*. Inquiring of Rosario as to what he had in the plastic bag would have been a lesser intrusion on his civil rights than drawing of a gun and shield and arresting him. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

ber 22, 1980, at 33 (reviewing Y. Kasimar, POLICE INTERROGATION AND CONFESSIONS (1980)).

If the judicially created exclusionary rule is to be altered or revoked, it should be done directly and not by a case by case fanciful fact finding.

Since proof of probable cause for the arrest of the appellant was lacking, the motion to suppress should have been granted. Accordingly, the judgment of the district court should be reversed, and I must dissent from the opinion of this Court.