UNITED STATES of America,

v.

Felix ALMONTE, et al., Defendants.

No. 83 CR 240.

United States District Court,
E.D. New York.

Jan. 9, 1984.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for the U.S.; William J. Muller, Asst. U.S. Atty., of counsel.

Stanley Schimmel, Brooklyn, N.Y., for defendant Felix Almonte.

Robert Blossner, New York City, for defendant Rafael Antonio Jaquez-Bisono.

Marion Seltzer, Federal Defender Services Unit, Brooklyn, N.Y., for defendant Carlos Checo.

Martin Goldberg, Brooklyn, N.Y., for defendant Luis Flores-Diaz.

Frank Lopez, Brooklyn, N.Y., for defendant Luis Fernando Mejia.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant Luis Fernando Mejia has moved to suppress evidence seized from him pursuant to his warrantless arrest and to suppress statements made by him incident to that arrest. An evidentiary hearing was held in this Court on November 28, 1983. For the reasons developed below, the motion is denied.

## FACTS

Beginning on May 12, 1983, Detective Robert Johnson of the New York Drug Enforcement Task Force (the "Task Force") began negotiating to buy a kilogram of cocaine from defendant Felix Almonte to whom Johnson had been introduced by a confidential informant. Almonte stated he had three sources of supply, but did not identify any of them. The same informant called Johnson on May 16, 1983 to advise him that Almonte was ready to do business.

At 2:45 P.M. on May 17, 1983, Almonte telephoned Johnson and told him to call "Ralph," (later identified as defendant Rafael Antonio Jaquez-Bisono). Johnson called Ralph, Bisono, and after several conversations, the two agreed to meet between 5:30 and 6:00 P.M. at 91–10 34th Avenue, Apartment 2C in Queens, Bisono's residence. At the appointed time, Johnson went to that address with agent Jose Velasquez of the Task Force. Both were undercover. The building at that address has an intercom and buzzer system, by which Johnson and Velasquez were admitted to the lobby. They went to apartment 2C and met Bisono, defendant Carlos Checo, and defendant Luis Flores-Diaz.

On a bedroom table in the apartment were several clear bags, one of which contained cocaine in rock form, as well as drug paraphernalia, and a loaded .44 caliber magnum revolver. After Johnson tested a sample of cocaine and agreed to buy one kilogram, Bisono said that he had only one pound of rock cocaine with him, but that if Johnson were willing to purchase powdered cocaine, he could have one kilogram that night. Johnson agreed.

Bisono dialed a number and spoke with someone he referred to as "Luis" or "Fernando." He turned to Johnson and Velasquez and told them the kilogram of powdered cocaine would be delivered in two hours, at approximately 9:00 P.M. The agents agreed to return at that time.

When the agents re-entered the building between 8:30 and 9:00 P.M., Flores-Diaz was waiting in the lobby. He said that everything was fine, that Bisono had the package, and that Johnson and Velasquez should go right up. Bisono admitted the agents into the apartment, in which Checo was also present.

On the table in the bedroom, Johnson saw a large brown package with a circled numeral "5" written on it in a red-orange color. Bisono told Johnson that this was half of the kilogram, that Johnson should

test it, and that if he were satisfied, the second half would be delivered. Although not happy with the purity of the flake cocaine, Johnson agreed to purchase the entire kilogram for a lower price than originally discussed. Bisono made a phone call, spoke briefly, and told Johnson the second half of the package would arrive in approximately 20 minutes.

Johnson told Bisono that he would go downstairs before the package arrived to get the purchase money. Checo accompanied Johnson, while agent Velasquez remained in the apartment. When Johnson walked out of the building, he signaled other members of his surveillance team. They arrested Checo as well as Flores-Diaz, who was still in the lobby. Johnson returned immediately to apartment 2C with other agents. When Bisono opened the door to admit Johnson, he was arrested. The agents then searched the apartment and seized the half-kilogram of cocaine, weapons, and drug paraphernalia.

Shortly after Bisono was arrested, Almonte and Sixto Martinez arrived at apartment 2C and they too were arrested.[1] Neither of them was carrying the second half-kilogram of cocaine.

With all the prisoners being held in the apartment, Johnson returned to the street. He saw a male, later identified as defendant Luis Fernando Mejia, enter the building carrying a plastic shopping bag. Mejia's arrival at the building came twenty to thirty minutes after Bisono had told Johnson the second package was on the way. Johnson was unable to communicate to his fellow agents in the apartment, however, that a man had arrived with a package.

Velasquez, who was in apartment 2C, heard the lobby intercom buzz, and he buzzed back to open the door. He next heard the apartment door bell ring, saw Mejia through the peephole, and opened the door. Mejia was clutching a plastic bag tightly, so that Velasquez could see the outline of its contents. Velasquez testified that the package in the bag was approximately the same size as the half-kilogram package seized in the apartment.

Velasquez grabbed Mejia's arm and agent Rivera grabbed the bag and opened it. Inside was a package the same size and with the same wrapping as that previously seized. It, too, bore the red-orange number "5" on its wrapping. Mejia was arrested and given his *Miranda* warnings in Spanish; he acknowledged that he understood them. Rivera searched Mejia's person and seized $1,161.00 in United States currency. After his arrest, Mejia made a number of statements with respect to who had given him the package to deliver, how much he had received to make the delivery, and what he knew about its contents.

## DISCUSSION

Because Mejia concedes that he was properly advised of his *Miranda* rights following his arrest, the only issue here is the lawfulness of his arrest and the search incident thereto. Mejia contends that there was no probable cause for his arrest because he had never been seen by the Task Force agents prior to the night of May 17, 1983, and because the agents did not know that it was Mejia who was to deliver the second half-kilogram of the cocaine.

Probable cause to arrest a defendant exists when the facts and circumstances within a police officer's knowledge would warrant a man of ordinary caution to believe that the defendant has committed or is committing a crime. *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 412–413, 9 L.Ed.2d 441 (1963); *United States v. Agapito*, 620 F.2d 324, 332 (2d Cir.1980), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). The determination whether probable cause existed is based upon the collective knowledge of all the agents, rather than on that of the arresting officers alone. *United States ex rel. LaBelle v. LaVallee*, 517 F.2d 750, 753 (2d Cir.1975), *cert. denied*, 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976).

---

1. On motion of the Government made at the suppression hearing on November 28, 1983, the indictment against Sixto Martinez was dismissed.

**1552**

As of 9:00 P.M. on May 17, 1983, the agents knew that half of the one-kilogram package of cocaine remained to be delivered, that Bisono had spoken to someone regarding this delivery, and that the package was to be delivered in approximately 20 minutes. Within the twenty to thirty minutes following, Almonte, Martinez and Mejia all came to the apartment. The first two were arrested, but they did not have the remaining half-kilogram with them. When Mejia arrived, the agents saw that the package he carried was the same size and shape as the half kilogram they had already seized. Based upon all of the knowledge within the agent's possession at the time of Mejia's arrest, I hold that agents Velasquez and Rivera had probable cause to arrest Mejia. There was an ample basis for the agents' conclusion that Mejia was delivering the second half-kilogram of cocaine. *United States v. Agapito, supra,* 620 F.2d at 332; *see United States v. Rosario,* 638 F.2d 460, 462 (2d Cir.1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981).

Incident to the lawful arrest, the agents were entitled to make a warrantless search of Mejia, including his clothing and pockets. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). That search properly included articles carried by Mejia, such as the plastic shopping bag. *United States v. Hayes,* 553 F.2d 824, 826 (2d Cir.1977), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977). Indeed, as occurred here, the warrantless search was proper even though carried out just prior to the arrest because there was probable cause to make that arrest. *United States v. Jenkins,* 496 F.2d 57, 73 (2d Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Riggs,* 474 F.2d 699, 704 (2d Cir.1973), *cert. denied,* 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973).

The arrest and warrantless search having been made lawfully, the motion to suppress the half-kilogram of cocaine and the currency seized from Mejia is denied. Further, Mejia was properly given his *Miranda* warnings, he stated that he understood them, then voluntarily chose to talk to the agents. Accordingly, his motion to suppress the post-arrest statements is also denied.

SO ORDERED.