**AMERICAN SAMOA GOVERNMENT, Plaintiff**

v.

**ABRAHAM SAMANA aka APELU SAMANA, and ABIGAIL SAMANA, Defendants**

High Court of American Samoa
Trial Division

CR No. 72-95
CR No. 73-95

April 2, 1996

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Frederick J. O'Brien, Assistant Attorney General
For Defendant Abraham Samana, Reginald E. Gates
For Defendant Abigail Samana, David P. Vargas

1

Order Denying Motion for *In Camera* Hearing:

On December 21, 1995, plaintiff American Samoa Government filed an information charging defendants with unlawful production of the controlled substance of marijuana, A.S.C.A. § 13.1020(a), and unlawful possession of the same controlled substance, A.S.C.A. § 13.1022(a). They were arraigned on December 22, and trial by jury is presently set for April 23, 1996.

On March 25, 1996, defendants moved this court to conduct an *in camera* hearing with the confidential informant used by the government in this case in order to determine whether the informant's identity should be disclosed. The motion was heard on March 29, 1996, with all counsel present. Defendants waived their right to be personally present.

## I. FACTS

On December 13, 1995, Police Officer Paulo Leuma presented an affidavit to District Court Judge John L. Ward II in support of a search warrant for marijuana on Samana family land in Leone, American Samoa, and in buildings there, the defendants' residence, a converted warehouse, and the old "Sogi" store. In the affidavit, he noted that a confidential informant had visited the Samanas' house on October 26, 1995 and had personally observed 10 marijuana plants growing between the house and store. Leuma went on to state that the confidential informant had provided reliable and accurate information to him in the past concerning the presence of marijuana plants. This prior information had led to arrests and seizures of marijuana. On December 2, 1995, the confidential informant advised Leuma that he had purchased marijuana from defendants at their residence. Leuma also stated that on two occasions in the past, January 18 and July 13, 1995, he had seized a total of 144 marijuana plants from the same property where the confidential informant claimed to have seen plants.

Based upon Leuma's affidavit, the judge found probable cause to believe that marijuana and narcotics paraphernalia would be found on the Samana property. He issued a search warrant for the land, residence and store. On December 15, 1995, Leuma and other officers executed the warrant, seizing marijuana plants, marijuana seeds, marijuana substance, and related drug paraphernalia. Arrest warrants were issued, and defendants were arrested and taken into custody.

2

## II. DISCUSSION

 Defendants seek the confidential informant's identity. The seminal case on this subject discusses the purpose of the privilege against disclosing an informant's identity:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citations omitted). *Roviaro* states that the public interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. *Id.* at 62. Also, "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way." *Id.* at 60-61.

After *Roviaro*, courts began using the technique of examining confidential informants *in camera* to determine whether the balancing test would tip in favor of the defendant and disclosure. *See, e.g., United States v. Rawlinson*, 487 F.2d 5, 7 (9th Cir. 1973); *United States v. Hurse*, 453 F.2d 128 (8th Cir. 1971); *United States v. Lloyd*, 400 F.2d 414 (6th Cir. 1968); *United States v. Jackson*, 384 F.2d 825 (3d Cir. 1967).

In an appropriate case, the *in camera* examination seems to us an effective way to satisfy the balancing of interests required by *Roviaro*. As the U.S. Court of Appeals for the Ninth Circuit has stated: "[By holding an *in camera* hearing,] [t]he interests of law enforcement are served by protecting the identity of the informant except where a need is demonstrated for disclosure by the informant's own testimony, and not by the speculative claims of the defendant." *Rawlinson*, 487 F.2d at 7.

 However, all of the cases defendants have cited and all of the cases we have found granting an *in camera* hearing do so only when the confidential informant is somehow important to the government's case in chief. No case that we have found has granted an *in camera* hearing where the confidential informant was relied on merely to obtain a search warrant. In fact, the rule

3

seems to be firmly against defendants in such a situation:

> What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant. As was said in *United States v. Ventresca*, 380 U.S. 102, 108, we have "recognized that an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions and his belief that any informant involved *whose identity need not be disclosed* . . . was credible or his information reliable" (emphasis added; internal quotation marks and citations omitted).

*McCray v. Illinois*, 386 U.S. 300, 311 (1967). Thus, while we must still balance according to *Roviaro* where the confidential informant is used merely to obtain a warrant, the balance is already tipped firmly against a defendant.

In this case, Leuma's affidavit informed the district court judge of some of the underlying circumstances supporting his conclusion that the confidential informant was credible and reliable. The judge found the information sufficient to show probable cause to issue a warrant. Defendants have not shown sufficient evidence tending to contradict this finding and tip the balance in their favor. As *McCray*, 386 U.S. at 313, further states: "Nothing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury." We will not make this assumption. Defendants must present sufficient evidence to bring the affiant's veracity into question.

■ At trial, defendants will certainly have an opportunity to cross-examine Leuma under oath. If during that cross-examination they are able to develop sufficient evidence which puts the existence or reliability of the confidential informant in question, they can again move for an *in camera* hearing on the question of disclosure of the informant's identity. If no such evidence is developed, there is no need for us to further explore this question.

4

The motion is denied. It is so ordered.